WILLIAM V. SNYDER ET AL., DEFENDANTS IN ERROR,
v. THE COMMERCIAL UNION ASSURANCE COMPANY
(LIMITED) OF LONDON, PLAINTIFF IN ERROR.

Submitted July 5, 1901—Decided November 11, 1901.

It appearing that a broker was employed by the plaintiffs to procure insurance for them, and to maintain the insurance up to a certain sum in good companies selected by him, that in the course of such employment he had for several years received from insurance companies notice of cancellation of policies held by the plaintiffs, and thereupon had replaced the insurance in other companies, and that this practice was known to the plaintiffs and not objected to by them—*Held*, that the question whether the broker had authority to accept notice of cancellation of an existing policy, to substitute for it the policy in suit, and thereupon to assent to the cancellation of the old policy, without consulting the plaintiffs, was a question of fact, not of law.

On error.

This case was tried before the Circuit Court of Essex county without a jury, with the result stated by the trial judge as follows:

"SWAYZE, J. This is a suit by William V. Snyder & Company against the Commercial Union Assurance Company, to recover the amount of a policy for $2,500, insuring the plaintiffs against loss by fire to a stock of merchandise, which was destroyed on the 27th of February, 1900. The policy is a one-year policy, dated February 24th, 1900, issued by James E. Garrabrant, an agent of the defendant at Newark.

"The circumstances under which the policy was issued are as follows: Snyder & Company were in the habit of carrying $300,000 of insurance upon their stock of goods. One of their brokers for the purpose of placing this insurance was Henry C. Rommel, who had charge of about half of the total amount. He had secured for Snyder & Company a policy of insurance in the Glens Falls Insurance Company to the amount of $2,500, and this policy had been delivered to Snyder & Com-

pany, and was in their safe at the time of the fire. On the 19th of February the Glens Falls Insurance Company requested their agent at Newark, Mr. R. P. Conlon, to cancel this policy. Mr. Conlon gave a verbal notice to Rommel of the desire of the Glens Falls company to cancel their policy immediately upon the receipt of the request from the company, and apparently as early as the 20th of February. Subsequently, and probably on the 23d of February, at Rommel's request, he gave Rommel a formal written notice, bearing date the 19th, but not served until the date last mentioned. The instructions of Snyder & Company to their brokers, or, at any rate, their intentions, seem to have been to carry only $300,000 insurance upon their stock. At the time of the fire there were outstanding policies of insurance or contracts for policies to the amount of $312,500. The loss exceeded that sum. The excess of insurance over $300,000 arose from the fact that policies were issued by the Atlas, Caledonian, Svea and Commercial Union (the policy in suit), amounting in all to $12,500, to take the place of policies for that amount theretofore issued. No claim is made by Snyder & Company in excess of the $300,000. The only question raised, as far as they are concerned, is whether the four companies last mentioned, or the companies which issued the prior policies, are responsible.

"This suit, while brought in the name of Snyder & Company, is really for the benefit of the Glens Falls Insurance Company, which paid Snyder & Company $2,500 and took an assignment of the claim against the Commercial Union, after the beginning of this suit, in pursuance of an agreement made prior thereto.

"Immediately after receiving the notice from Mr. Conlon of the cancellation of the Glens Falls policy, Mr. Rommel, Snyder's broker, met Mr. James E. Garrabrant, the agent of the defendant company, and contracted with him for a policy of $2,500. Garrabrant represented several companies, but it does not appear whether he stated in what company he would place the new policy for $2,500. As a matter of fact, he placed it in the Commercial Union, and that policy appears to have

been written, or, at any rate, it bears date February 24th, 1900, three days before the fire. It was not delivered, however, to Rommel until the morning after the fire; and Rommel delivered the policy after the fire to Mr. Snyder. Rommel and Snyder both understood that the new policy was to take the place of the Glens Falls policy, and Snyder made a pencil endorsement upon the policy in suit to that effect; but nothing was said to Garrabrant about the new policy being in substitution for the Glens Falls policy. Snyder made proof of loss under all of his policies, but it was understood between him and the insurance companies that the total amount he claimed was only $300,000, and that all he desired was to have it settled which of the companies were indebted to him.

"The Glens Falls policy seems to have been taken up by the company at the time they bought Snyder's claim against the Commercial Union, and the policy was produced by them marked 'canceled,' with a slip attached, dated June 1st, 1900, whereby the members of the firm of Snyder & Company, in writing, ratified and confirmed 'the action of our broker, Henry C. Rommel, in accepting notice of cancellation from the Glens Falls Insurance Company of $2,500 of insurance upon our stock, located in Newark, N. J., and of the replacing of the same amount of insurance by a binder and by policy No. 205,668 in the Commercial Union Assurance Company of London, England.' It is evident that this ratification and the actual stamp of cancellation upon the Glens Falls policy took place at the time as a part of the transaction by which the Glens Falls Company acquired the interest of Snyder & Company in their claim against the Commercial Union.

"The defendant insists that the Commercial Union policy was issued only in substitution for the Glens Falls policy, and that it could not become binding until the cancellation of the Glens Falls policy; that that cancellation had not taken effect at the time of the fire, and that therefore the Commercial Union policy was not a subsisting contract when the property insured thereby was destroyed. On the other side, it is said that Rommel, having authority to take out insurance for Snyder & Company, had the authority to contract with Garra-

brant for this insurance; that there was nothing in the contract between Rommel and ·Garrabrant to indicate that the Commercial Union policy was in substitution for the Glens Falls policy, or that there was any condition precedent to its being effective; and it is argued that a purpose existing in the mind of Rommel or an intention existing in the mind of Snyder to limit his insurance to $300,000 would not avail to relieve the Commercial Union company from its liability.

"As I look at the case, this contention of the plaintiffs cannot be sustained, unless by virtue of the subsequent ratification by Snyder. While it is true that a purpose existing in the mind of Rommel or an intention on the part of Snyder to limit his insurance to $300,000 would not affect the validity of the contract with Garrabrant, the real question on that branch of the case (aside, as I say, from the question of ratification, which I will deal with presently) is with regard to Rommel's authority to make the contract; and Rommel's authority to contract for Snyder & Company was limited to the amount of insurance outstanding. He had no authority to make the contract, unless for the purpose of substitution, and Snyder would not have been bound to pay the premiums on any more insurance than he had authorized. I think that this is the practical construction, also, which has been given to the matter by Snyder & Company in limiting their claims under the policies to $300,000, and not attempting to set up a claim to $312,500.

"It is conceded by the·defendant that if the Glens Falls policy was properly canceled prior to the fire, then the Commercial Union policy became a subsisting contract, and the plaintiffs must prevail. The oral notice of cancellation was given more than five days before the fire. The written notice was not given earlier than the 23d. Neither notice, however, was brought to the attention of Snyder & Company, either by Conlon, the agent of the Glens Falls company, or by Rommel, until after the fire.

"It is well settled by the authorities cited at the argument that a broker who is merely employed to obtain insurance is not thereby authorized to receive notice of cancellation. *Grace*

v. *American Central Insurance Co.,* 109 *U. S.* 278; *Hermann* v. *Niagara Fire Insurance Co.,* 140 *N. Y.* 411; *Wilson* v. *New Hampshire Fire Insurance Co.,* 140 *Mass.* 210. But while this is the general rule, the broker may be authorized to receive notice of cancellation. Each case depends upon its own facts. *Stone* v. *Franklin Insurance Co.,* 105 *N. Y.* 543; *Karelsen* v. *Sun Fire Office,* 122 *Id.* 545, and the very recent cases of *Hamm Realty Co.* v. *New Hampshire Fire Insurance Co.,* 83 *N. W. Rep.* 41, decided by the Supreme Court of Minnesota in 1900, and *White* v. *Insurance Co.,* 93 *Fed. Rep.* 161, in the United States Circuit Court, in Rhode Island, in 1899. The judgment in the last case was affirmed in the Circuit Court of Appeals for the First Circuit on June 15th, 1900; the opinion by Colt, Circuit Judge, is to be found in 103 *Fed. Rep.* 260; but the record did not present the real question in dispute, and the opinion in the Court of Appeals adds nothing to the opinion in the Circuit Court. The question in every case is a question of fact. The broker is not authorized to receive notice of cancellation by the mere fact that he is the broker through whom the policy was procured. He may be authorized to receive notice of cancellation either by express authority or, as more usually happens, by the course of business between the parties.

"In this case I find that Rommel was authorized by Snyder to receive notices of cancellation of policies procured by him, and was also authorized to procure new policies in place of those thus canceled. He says himself that he had charge of substitutions, and that he had received all the notices of cancellations of all the policies he had placed during the whole term he had served Mr. Snyder as broker, some seven or eight years; that his custom upon receiving such notices was to replace the insurance in some other company, take the policy to Snyder's office, and take up the policy that was ordered canceled; that he cannot recall a case where he did not receive the notice, and that Snyder took the substituted policies and paid the premiums. This testimony is uncontradicted, and I think brings the case within the rule laid down in the case of the Hamm Realty Company and the case of White *v.* Insurance Co., above

cited. See, also *Arnfeld* v. *Guardian Assurance Co.*, 172 *Pa. St.* 605; *Dibble* v. *Northern, &c., Co.*, 70 *Mich.* 1.

"My attention was called to two cases in Massachusetts and one in New Hampshire, which it was thought sustained the opposite view, but, upon examining those cases, I think they are clearly to be distinguished from the present case. In *Massasoit Steam Mills* v. *Western Assurance Co.*, 125 *Mass.* 110, the agent by whom the substituted policy was issued was also the agent of the company which had issued the original policy. He was not the agent of the assured at all, and the attempt was merely an attempt to change the plaintiff's insurance from one company to another, represented by the same agent. Clearly, under those circumstances, the company issuing the second policy issues it only upon condition that the first policy shall be canceled, and the agent of the company issuing the first policy could not be assumed to be the agent of the assured for the purpose of cancellation. In *Stebbins* v. *Insurance Co.*, 60 *N. H.* 65, it appeared that Jenny & Sherman were the agents for both the companies and intended the Lancanshire policy as the substitute for the North British and Mercantile; but Jenny & Sherman were not, in that case, the agents of the assured, and there was no binding contract of insurance between the company and Barber, the plaintiff's agent, at the time of the fire. In the present case there was a binding contract between Snyder's agent and Garrabrant at the time of the fire, dependent only upon the cancellation of the outstanding policy. In the Stebbins case the court said: 'Neither the plaintiff nor his agent had any knowledge of the existence of the policy previous to the fire. It was not an existing contract of insurance when the loss happened, and the subsequent delivery was ineffectual to give it validity.' The same remarks apply to *Wilson* v. *New Hampshire Insurance Co.*, 140 *Mass.* 210.

"Finding, as I do, that Rommel had authority to accept notices of cancellation and to negotiate for new policies, it becomes unimportant to decide whether or not the Glens Falls policy was canceled by the expiration of the five days provided for in the standard policy; for, as a matter of fact, Rommel

waived the time limit, and the Glens Falls policy ceased to be binding as soon as the new policy procured in substitution for it became effective. This was as early as the 24th of February, on which day the policy bears date, and three days before the fire.

"Even if, however, Rommel had not been at the time authorized to cancel the Glens Falls policy and substitute the Commercial Union policy, I think the subsequent ratification by Snyder would remove that difficulty. It has been held in this state (*Marts* v. *Cumberland Insurance Co.,* 15 *Vroom* 478) that a person for whose benefit an insurance policy is taken out may ratify the transaction either before or after the loss, and, *a fortiori,* I see no reason why the assured may not ratify a cancellation after a loss. The ratification must be complete and of the whole transaction, and the ratification of the contract for the substituted policy would necessarily carry with it a ratification of the cancellation of the old policy. In this case Snyder ratified Rommel's action by the pencil endorsement on the Commercial Union policy. He subsequently ratified it, in writing, on June 1st, 1900. I do not think Snyder lost any rights by making proof under both policies. That was, I think, a proper precaution for him to take. The fact that he made an unfounded claim against the Glens Falls company cannot relieve the Commercial Union from his just claim.

"The result is that I find in favor of the plaintiffs and against the defendant, and assess the damages at $2,500, besides interest. The interest may be calculated by counsel. I will allow counsel for the defendant time to frame his exceptions to my conclusions on questions of law, and to frame such requests to find, and exceptions as may be proper to secure him a review of my conclusions on questions of fact, as far as the same may be reviewable."

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, GARRISON and COLLINS.

For the plaintiff in error, *Edward A. & William T. Day.*

For the defendants in error, *Riker & Riker* and *Richard & Heald.*

The opinion of the court was delivered by

DIXON, J.   The learned judge of the Circuit Court found as a fact that the broker who procured for the plaintiffs the policy in suit had the authority of the plaintiffs to do so.   He deduced this fact from testimony showing that the broker had been employed by the plaintiffs to procure insurance for them and to maintain the insurance up to a certain sum in good companies selected by him; that in the course of such employment he had for several years received from insurance companies notice of cancellation of policies held by the plaintiffs, and had thereupon replaced the insurance in other companies, and that this practice was known to the plaintiffs and was not objected to by them.

The legal propriety of this deduction is sufficiently vindicated by the opinion above set forth; and the authority of the broker being thus established, no further question calling for consideration on writ of error remains.

The judgment is affirmed.