## Stuyvesant Insurance Company v. Barkett.

(Decided November 23, 1928.)

Appeal from Fulton Circuit Court.

1. Insurance.—A broker or agent employed by owner to procure policy of insurance on property is not authorized to accept notice of cancellation of such policy, but his employment is at an end when he procures the insurance, and subsequent notice to him by insurance company of cancellation of its policy is no notice to insured.

2. Insurance.—When broker or agent is intrusted by owner with duty of keeping owner's property insured, taking out policies thereon, and authorized to obtain other insurance in lieu of expired or canceled policies, broker or agent is general agent of owner in those respects, and notice to him of cancellation of policy, provided he substitutes therefor another policy for like amount, is notice to insured.

3. Insurance.—Authority of broker or agent intrusted by owner with duty of keeping owner's property insured is question of fact for jury, where nature and character of agency is made an issue by the evidence.

4. Insurance.—Facts held not to show as matter of law that insurance broker, who for number of years had carried all insurance of plaintiff with authoriy to keep property insured, select insurers, and renew policies when they expired, was insured's agent for purpose of accepting notice by insurer of cancellation of policy and substituting another therefor.

5. Insurance.—Where insurance broker, who for several years was authorized to keep insured's property insured, select insurers, and renew policies, assumed to act as agent of insured for purpose of accepting notice of cancellation of policy and substituting another therefor, insured with full knowledge of facts could elect either to ratify or disaffirm broker's act, but he could not ratify part of transaction to his advantage and disaffirm that detrimental to him.

6. Insurance.—Where insured, with full knowledge that broker assumed to act as his agent in accepting notice of cancellation of policy and substituting another therefor, accepted substituted policy and collected amount thereof, he thereby ratified acts of broker in accepting notice of cancellation and substituting another policy.

7. Appeal and Error.—In action on insurance policy claimed by insurer to have been canceled by broker acting as insured's agent, admission of testimony, as to statement by broker that all of insured's policies were in good standing, held prejudicial error, since broker was not insurer's agent and evidence was not competent as substative evidence.

8. Insurance.—Where policy sued on provided that insurer had right to terminate policy on five days' notice without consent of insured, instruction requiring insured's consent to cancellation of policy and substitution of another therefor held erroneous.

HESTER & STAHR and WOODWARD, WARFIELD & HOBSON for appellant.

W. J. WEBB for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

In January, 1925, the appellee, W. S. Barkett, who was the plaintiff below, carried fire insurance on his

household goods to the amount of $2,500, in three policies—two for $1,000 each, and one for $500. One of the $1,000 policies was issued by the Hartford Insurance Company in January, 1925, and in February, 1925, it notified its agent at Hickman, Ky., J. Dee Henry, to cancel a large number of its policies, including the one on appellee's property. The company gave Henry until April 30 to take up the outstanding policies and replace them with policies in other companies. Henry was not able to rewrite the insurance covered by some of the policies directed to be canceled in companies represented by him, and appellee's policy was one of these. Henry asked Miss Effie Bruer, who was appellant's agent at Hickman, if she would write a policy for appellee for $1,000 to be substituted for the policy of the Hartford Insurance Company. She wrote a policy for $1,000 on appellee's household goods in appellant company on May 8, 1925, but made it effective as of April 30, 1925, on which date the Hartford Insurance Company policy was canceled. She delivered the policy to Henry, who delivered it to appellee. As soon as the state agent of appellant company learned that Miss Bruer had written this policy he notified her to cancel it, and she notified Henry that appellant's policy, which she had issued to appellee, had been canceled. Henry then wrote a policy for the same amount and on the same property in the Northern Assurance Company. This policy was written on the 22d day of May, 1925, but was made effective as of April 30, 1925. Henry claims that he delivered the Northern Assurance Company policy to appellee and informed him that it had been written to take the place of the Stuyvesant Insurance Company policy which had been canceled. Appellee denies that this conversation took place. Both Henry and Miss Bruer failed to take up the policy.

On February 10, 1926, the property covered by the policies above described was totally destroyed by fire. Appellee filed his proof of loss with the Northern Assurance Company, and that company paid to him $1,000. He also demanded payment from appellant, which was refused upon the ground that the policy had been canceled. Appellee then brought this suit on the policy and recovered judgment for the full amount, and from that judgment the defendant has appealed.

One of the grounds relied upon by appellant for a reversal is the refusal of the trial court to sustain its motion for a peremptory instruction. This ground for reversal is based on the theory that the policy was validly canceled because Henry was an insurance broker having general authority to represent the appellee for the purpose of keeping the, latter's property insured and to select the insurers and to deal with them generally with reference thereto on behalf of his principal, and that notice to him of the cancellation of the policy was notice to appellee.

The policy in question contained the following provision:

"This policy shall be cancelled at any time at the request of the insured; or by the company by giving five days notice of such cancellation."

By this provision the insurer had the right to cancel the policy at any time by giving five days' notice to the insured. The only purpose of the notice to be given by the company upon cancellation is to enable the insured to obtain insurance elsewhere before he is subjected to risk without protection. The undisputed evidence shows that Henry had carried all of appellee's insurance for a number of years; that he was authorized to keep appellee's property insured, to select the insurers, renew the policies when they expired, and that at least in one instance he had obtained other insurance in lieu of a canceled policy. Appellee attempted to show that he had been carrying insurance to the amount of $3,500 on his household goods, but he could only show this by including the appellant company's policy. All of the evidence was to the effect that he had carried $2,500 insurance on his household goods for a number of years, and that he had never requested Henry to increase that amount. The evidence also conclusively shows that appellee never paid the premium on the appellant company's policy, but did pay the premium on the Northern Assurance Company policy.

It is a well-settled rule that a broker or agent employed by an owner to procure a policy of insurance on property is not authorized to accept notice of the cancellation of such policy. His employment is at an end when he procures the insurance, and the subsequent notice to him by the insurance company of the cancelaltion of its

policy is no notice to the insured. Connecticut Insurance Co. v. T. C. Caummisar & Sons, 218 Ky. 378, 291 S. W. 776. It is equally well settled that when a broker or agent is intrusted by an owner with the duty of keeping the owner's property insured, taking out policies thereon, and authorized to obtain other insurance in lieu of expired or canceled policies, the broker or agent is the general agent of the owner in these respects as to the latter's insurance, and notice to him of cancellation of a policy, provided he substitutes therefor another policy for a like amount, is notice to the insured. However, the authority of such an agent or broker is a question of fact for the jury, where the nature and character of the agency is made an issue by the evidence. In Cooley's Briefs on Insurance, vol. 2, p. 4594, it is said:

"As a general rule, an agency to procure insurance is not, as a matter of law, presumed to continue for the purpose of cancelling the insurance procured, or of receiving notice of such cancellation. Such an agency terminates when the insurance is procured, and the policy delivered to the principal."

And further:

"The broad rule must, however, be modified if the agency is a general one, and not merely a special agency for that particular policy. A notice cancelling a policy given to a broker employed generally to look after all of the policy holder's insurance business, and who has exercised such employment continuously for a considerable period, is sufficient. This is the principle underlying the leading case of Stone v. Franklin Ins. Co., 105 N. Y. 543, 12 N. E. 45, and it has been approved and followed in numerous well considerd cases."

In the Caummisar case, supra, it was held that there was no evidence to show that the agent posssssed any such general powers as to constitute him the agent of the insured for the purpose of receiving notice of cancellation, but after citing authorities upholding the view that an agent employed by the insured only for the purpose of procuring the policies sued on is not authorized to accept notice of cancellation of the policies, the court said:

"The same authorities and all others to which our attention has been called, confine the rule as just

stated to cases and instances where the agent or broker posessed only special authority to effect the insurance and which it is held terminated when that was done.   On the other hand, as stated in the text of R. C. L. referred to, 'Where, however, a property owner constitutes the agent of fire insurance companies or a broker as his agent to keep the property insured and empowers him to select the insurer, the agent has the power to cancel a policy without notice to the insured and to substitute therefor a policy in another company,' and that is especially true where the agent or broker of the insured is not the agent of the insuring company.''

Here the agent was not the agent of the insuring company, but we cannot say, from the authority admittedly conferred upon Henry by appellee and the course of dealings between them as disclosed by the evidence, that, as a matter of law, the former possessed such general powers as to constitute him the agent of the appellee for the purpose of accepting notice of the cancellation of the policy in suit and substituting therefor the Northern Assurance Company policy.   But if the facts in this case are not sufficient to show as a matter of law that Henry, as agent of appellee, was authorized to accept notice of cancellation of appellant company's policy and to substitute therefor the Northern Assurance Company policy, what is the effect of appellee's action in asserting and collecting the claim against the Northern Assurance Company?   Even if Henry was not the insured's agent when the substitution was made, he did assume to act as such agent, and, with full knowledge of the facts, appellee may elect either to ratify or disaffirm the acts of Henry; but he cannot ratify a part of the transaction that is to his advantage and disaffirm what is detrimental to him.   Elk Valley Coal Co. v. Thompson, 150 Ky. 614, 150 S. W. 817; Doan v. Ball, 215 Ky. 448, 285 S. W. 208. The rule is thus stated in 21 R. C. L. 923:

''If a principal elects to ratify any portion of an unauthorized transaction of his agent he must ratify the whole of it.   He cannot avail himself of such acts as are beneficial to him, and repudiate such as are detrimental, whether the ratification be expressed or implied.''

Appellee cannot claim a benefit arising from the act of his agent in taking out a policy, and at the same time repudiate the object and purpose for which the new policy was obtained. The Northern Assurance Company policy was taken out by Henry, assuming to act for appellee, to replace the policy written a few days before in appellant company. The two policies were effective as of the same date, were for like amounts, and covered the same property. The new policy was taken out as a substitute for the canceled policy and not for the purpose of increasing the amount of insurance already on the property. By accepting the substituted policy and collecting the amount thereof appellee ratified the acts of Henry in accepting notice of cancellation of the policy in suit and substituting therefor insurance with another company. The facts in Arnfeld v. Guardian Assurance Co., 172 Pa. 605, 34 A. 580, are very similar to the facts in this case. There plaintiff employed a broker to procure insurance, and the broker obtained a policy from the Guardian Assurance Company. This company thereafter notified the broker of its purpose to cancel the policy within five days. Acting upon the notice, the broker at once procured a policy in the Queen Company and notified the Guardian Company and assured it that it was relieved from further liability. The insured accepted the policy from the Queen Company, and that company paid its proportion of the loss. Action was also brought on the first policy, and in holding that if the second policy was taken out as a substitute for the first no recovery could be had on the first policy, the court said:

"It may be conceded that there was no formal, technical cancellation of the policy issued by the defendant. It was in possession of plaintiffs. Defendant had not returned or offered to return to them the premium. But was there a substitution of the liability of a third party for that of the defendant, by the consent of the plaintiffs, defendant, and the third party? Defendant's contract was one of indemnity in a fixed amount, against loss by fire on certain goods. A third party, the Queen Insurance Company, took its place, and indemnified plaintiffs against precisely the same loss, in the same amount, on the same goods, then stood by its contract, and paid the loss. This was a complete and effectual sub-

stitution of another insurer in place of defendant, and this was by the consent of all parties interested; for it is not important to discuss the exact authority of an insurance broker, as Zugschmidt was, and determine to what extent he was the agent of the insured and the insurers—that is, where the line should be drawn. It is undisputed he acted throughout for the plaintiffs and for both companies, and communicated with both; and all consented, and ratified his acts. Nor is it controlling that there was no formal cancellation or surrender of the first policy. The plaintiffs got the policy in the Queen Company, and, what is more important, got the money upon it. The premium they had paid to the defendant, in so far as they were entitled to a return of it, is owing by the defendant, through the broker, to the Queen Company, to whom the broker, acting for plaintiffs, transferred defendant's liability. Plaintiffs ought to have surrendered for cancellation defendant's policy. What ought to have been done, equity will consider as having been done. The case is not unlike that of a creditor who has taken surety for a debt. The surety declines to be longer responsible. The debtor procures a new surety, acceptable to the creditor, who takes the place of the first on a new note. The creditor retains possession of the old note. The new surety pays the debt. The creditor sues the first surety on the old note, alleging it had never been formally delivered up or canceled. In such case the learned judge of the court below would very promptly have said that, if a creditor be once paid, his mere possession of the old note would not warrant the exaction of a second payment of the same debt. It seems to us there is no distinction between the supposed case and the one before us, except that the first is a contract for suretyship, and the second of indemnity. The injustice worked by permitting a second recovery in the one is the same as in the other. No party ought to be allowed to recover twice for the same debt, no matter how many instruments evidencing the amount of his debt he may hold, nor how many distinct obligors there may be on them. Most creditors are content if their debt be paid once. All ought to be."

Also see Larsen v. Thuringia American Insurance Co., 208 Ill. 166, 70 N. E. 31; Snyder v. Commercial Union Assurance Co., 67 N. J. Law, 7, 50 A. 509; Id., 67 N. J. Law 626, 52 A. 384; Hamm Realty Co. v. New Hampshire Fire Insurance Co., 80 Minn. 139, 83 N. W. 41; Phoenix Insurance Co. v. State, 76 Ark. 180, 88 S. W. 917, 6 Ann. Cas. 440; National Fire Insurance Co. v. Oliver (Tex. Civ. App.) 204 S. W. 367; Hollywood Lumber & C. Co. v. Dubuque Fire & Marine Insurance Co., 80 W. Va. 604, 92 S. E. 858; White v. Ins. Co. (C. C.) 93 F. 161.

While it is argued that the Northern Assurance Company policy was taken out as a substitute for the policy in suit, and appellee having accepted the former and collected the amount thereof cannot maintain an action on the first policy, there is no pleading to support this contention. Appellant in its answer pitched its defense solely on the ground that Henry was appellee's agent authorized to accept notice of cancellation and notice to him was notice to the insured. As heretofore stated, the facts as developed at the trial do not authorize us to hold as a matter of law that Henry was appellee's agent for the purposes claimed. As the judgment must be reversed on other grounds, the appellant may, if it so desires, amend its pleadings so as to plead as a defense the election of appellee to ratify the act of Henry in substituting the Northern Assurance Company policy for the policy in suit.

Appellant complains of the action of the trial court in permitting appellee and Mrs. Edna Shaw to testify to an alleged conversation Henry had with appellee at the latter's store after the fire, when it is claimed by them Henry examined appellee's policies, made a list of them, and told him they were in good standing. The admission of this testimony was error prejudicial to appellant. Henry was not appellant's agent, and this evidence was not competent as substantive evidence. The only purpose for which it would be admissible would be to contradict Henry, but appellee did not lay the foundation for the contradiction.

Appellant also complains of instructions 1 and 2, which, in substance, authorized the jury to find for the insurer if they believed from the evidence that the plaintiff consented and agreed to a cancellation of the policy sued on and accepted in lieu thereof a policy in the Northern Assurance Company for the same amount

and with the understanding that the first policy was canceled. Under any view of the case the instructions were erroneous. The insured's consent to the cancellation of the policy was unnecessary. By the terms of the policy the insurer had the right to terminate the policy on five days' notice without the consent of the insured.

Judgment reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.

The whole court sitting.