213 So.2d 701 (1968)
CAT 'N FIDDLE, INC., a Florida Corporation Operating and Doing Business As Cat 'n Fiddle Restaurant & Lounge, Petitioner,
v.
The CENTURY INSURANCE COMPANY, Limited, a Corporation Organized and Existing under the Laws of New York, Respondent.
No. 36598.
Supreme Court of Florida.
July 18, 1968.
Rehearing Denied September 23, 1968.
*702 Lurie, Lesperance & Goethel, Miami, for petitioner.
Fred C. Davant of Wicker, Smith, Pyszka, Blomqvist & Davant, Miami, for respondent.
ERVIN, Justice.
We have for review by conflict certiorari a decision of the District Court of Appeal, Third District, reported at 200 So.2d 208. Petition for writ of certiorari to the District Court was granted by order dated October 2, 1967.
Cat 'n Fiddle, Inc., petitioner herein and plaintiff in the trial court, was formed by one Raymond McGee, and in November, 1960 acquired the Cat 'n Fiddle Restaurant & Lounge. Shortly thereafter, Petitioner, through McGee, engaged Hurst Insurance Agency, Inc., herein referred to as Hurst, to obtain fire insurance covering the premises. The parties considered the premises to be of a value that could justify fire insurance in the amount of $100,000 and Hurst recommended the insurance be obtained. On September 15, 1961, Century Insurance Company, Limited, respondent herein, issued a fire insurance policy to Petitioner in the amount of $35,000. Two other fire insurance policies were written on this same date  $20,000 with Farmers' Alliance Insurance Company and $20,000 with Guaranty Security Insurance Company  making a total insurance in force of $75,000. The policies were not delivered to Petitioner but to Hurst, and with Petitioner's approval were retained by Hurst.
On November 10, 1961 Farmers' Alliance and Guaranty Security cancelled their insurance by notice to Hurst. There is some indication in the record that Hurst advised Petitioner of such cancellation. On November 15, 1961, Respondent, Century Insurance Company, Limited, issued an endorsement increasing its coverage by $35,000 on the policy that was previously issued to the Petitioner. The original policy issued by Respondent contained a provision that the policy could be cancelled by the insurer at any time by giving five days' written notice of cancellation to the insured. The endorsement to the policy provided, "signature is required when endorsement reduces or restricts policy."
On March 5, 1962 Respondent, by endorsement, eliminated $35,000 of its coverage, thereby reducing its policy to the original $35,000. Notice of this elimination *703 by endorsement was directed to Hurst and Petitioner never received written notice from Respondent or from Hurst of the elimination of $35,000 of insurance coverage. On March 26, 1962 Respondent requested that the policy issued to the Petitioner be cancelled altogether. This request was directed to Hurst and Respondent never directed such a request to Petitioner in accordance with the policy provision, nor did Hurst advise the Petitioner of the cancellation of the policy issued by Respondent. Also on March 26, 1962, Hurst, through another agency, wrote policies of insurance in two other insurance companies, each for a coverage of $15,000.
On April 10, 1962 a fire occurred which totally destroyed the "insured" property. After the fire, Petitioner learned of the cancellation of the fire insurance policy issued by Respondent and the acquisition of the two policies for $30,000 coverage. Notice of loss and proof of claim were submitted by Petitioner to Respondent, which denied liability based on its prior cancellation. Subsequently Petitioner filed an action against the two companies which issued coverage in the total amount of $30,000 and received payment of $25,000 thereon in settlement.
The present controversy arises from an action brought by Petitioner against Respondent and Hurst. One count sought recovery from Respondent on the theory that Respondent's policies were in effect at the time of the fire. Two counts were filed against Hurst, one alleging negligence in failing to notify Petitioner of the cancellation of the $70,000 coverage by Respondent when it occurred, and the other charging Hurst with negligence in failing to keep the property insured.
On the trial of the cause at the close of Petitioner's case, the court granted motions of Respondent and Hurst for directed verdict and entered judgment thereon. On appeal, the District Court of Appeal, Third District sustained the directed verdict in favor of Respondent but reversed the directed verdict in favor of Hurst. In affirming the judgment in favor of Respondent, the District Court, citing Graves v. Iowa Mutual Insurance Company (Fla. 1961), 132 So.2d 393, 96 A.L.R.2d 282, reasoned that under the circumstances presented the general rule that notice to an agent is notice to the principal controlled.
Before disposing of the present controversy on the merits, we feel compelled to comment briefly on this Court's jurisdiction pursuant to Florida Appellate Rule 2.1(5) (b), 32 F.S.A. In support of conflict jurisdiction, Petitioner relies on Taylor v. Glens Falls Ins. Co. (Fla. 1902), 44 Fla. 273, 32 So. 887, and Handley v. Home Ins. Co. of New York (Fla. 1933), 112 Fla. 225, 150 So. 902. In each of these cases, notice of cancellation as required by the policies was not given, although the agent who had written the policies was requested by the insurer to cancel the same. In each case, the attempted cancellation was held to be ineffective. In the Taylor case, the Court noted that the policy was unauthorizedly cancelled without the knowledge or consent of the real beneficiaries. The gravamen of these decisions is that if, contrary to the provisions of the policy, cancellation notice is given to a person other than the insured, it must appear that the person accepting such notice had the authority to waive the policy provisions and assent to the cancellation in the form or manner given. In this respect, it follows that a determination that the person receiving notice of cancellation is the agent of the insured does not per se authorize the agent to bind the insured by accepting cancellation notice.
In the instant case, the District Court concluded that under the circumstances the maxim that notice to the agent is notice to the principal controlled. To the extent that this decision neglects to consider precisely the authority of the person or agent accepting notice of cancellation, we think it fails to measure up to the import of the above cited authorities, thereby *704 giving rise to the conflict necessary to establish our jurisdiction.
After reviewing the briefs and arguments on the merits, we are of the opinion that the judgment affirming a directed verdict in favor of Respondent should be reversed.
The purpose of a provision in an insurance policy providing that the insurer can cancel the policy after giving notice to the insured for a prescribed period is to enable the insured to obtain insurance elsewhere before he is subjected to risk without protection. See Graves v. Iowa Mutual Insurance Company, supra. See also, 29 Am.Jur. Insurance § 834. Notice of cancellation being a provision designed to secure and protect the insured's interest, the burden of proving cancellation in accordance with the policy provisions is in the party asserting it, in this case the Respondent. See 45 C.J.S. Insurance § 461a. Furthermore, when an insurer has failed to give personal notice to the insured, but seeks nevertheless to establish cancellation on the theory that it effected notice to the insured's agent, it is incumbent on the insurer to demonstrate that the scope of the agent's authority encompassed the authority to perform the act sought to be charged to the agent's principal. See Foye Tie & Timber Co. v. Jackson (Fla. 1923), 86 Fla. 97, 97 So. 517.
In the present case we do not understand Respondent to contend that Hurst was expressly authorized by Petitioner to accept notice of cancellation. Nor do we understand Respondent to contend that Hurst had apparent authority to accept cancellation notice. The record in this respect contains no facts suggesting that Petitioner through acts or representations held Hurst out as possessing the authority to accept notice of cancellation on its behalf. In addition, there is no evidence in the record which would support a good faith belief on the part of Respondent that Hurst was acting as anything but an insurance broker for Petitioner. Therefore our inquiry is reduced to ascertaining whether Hurst was impliedly authorized to accept Respondent's notice of cancellation because of the authority actually conferred upon Hurst in handling Petitioner's insurance matters.
Having precisely framed the determinative issue presented in the instant case, we now pass to consideration and application of the controlling principles of law. The general principles applicable to controversies concerning the scope of an insurance broker's authority to accept cancellation notice on behalf of an insured can fairly be stated as follows:
"[1-3] It is a well-settled rule that a broker or agent employed by an owner to procure a policy of insurance on property is not authorized to accept notice of the cancellation of such policy. His employment is at an end when he procures the insurance, and the subsequent notice to him by the insurance company of the cancellation of its policy is no notice to the insured. * * * It is equally well settled that when a broker or agent is instructed by an owner with the duty of keeping the owner's property insured, taking out policies thereon, and authorized to obtain other insurance in lieu of expired or canceled policies, the broker or agent is the general agent of the owner in these respects as to the latter's insurance, and notice to him of cancellation of a policy, provided he substitutes therefor another policy for a like amount, is notice to the insured." (Emphasis supplied.) Stuyvesant Ins. Co. v. Barkett (Ky.Ct.Apps. 1928), 226 Ky. 424, 11 S.W.2d 87, 89.
At the outset, we note that the first proposition announced above does not appear to control the instant case in light of the facts exhibited by the record. The record indicates that Hurst was more than an agent for the limited purpose of procuring insurance on the Petitioner's property. From the record and testimony of Mr. *705 McGee, the organizer and equitable owner of Petitioner, it appears that Hurst not only was charged with procuring insurance in the first instance, but also was entrusted, minimally speaking at least, with the task and duty of seeing that Petitioner's insurance coverage was maintained. We conclude, therefore, that the agency relationship between Petitioner and Hurst was not merely a special agency which terminated when the insurance in question was procured. Our conclusion in this respect, however, does not resolve the ultimate question of whether the insurance coverage was effectively cancelled under the theory that Hurst had implied authority to accept cancellation notice.
Respondent has cited numerous cases and authorities adhering to the second proposition appearing in the above quotation, that is, when an insurance agent or broker is authorized by the insured not only to place the insurance but also to keep the property covered, he has the implied authority to do whatever is reasonably necessary to accomplish that object, including accepting cancellation or notice of cancellation on behalf of the insured. We quite agree with Respondent that under certain circumstances an agent or broker may be impliedly authorized to cancel or accept notice of cancellation on behalf of the insured. After careful consideration of the authorities presented, however, we think that the better reasoned decisions dealing with the implied authority of a broker to cancel in situations where he is entrusted with the duty of keeping the property insured have limited such authority to those instances where a policy of like amount or other satisfactory insurance is substituted for the cancelled policy. This limitation or qualification to the proposition asserted by Respondent is aptly stated in 45 C.J.S. Insurance § 450 d(2):
"On the other hand, the notice may properly be given to an agent or broker who is employed by insured to keep his property insured, with power to select insurer, or to attend generally to all matters of insurance for him, and, as considered infra § 461, such authority may be presumed from a long course of dealing between the parties; but the rule has been limited by requiring that such agent substitute for the canceled policy a policy for a like amount, and by the holding that the authority to keep the property insured would not be authority to consent to a cancellation which would leave the property wholly without insurance." (Emphasis supplied.)
Another statement of the limitation or qualification to the rule advanced by Respondent appears in 45 C.J.S. Insurance § 456:
"A general agent of insured with discretionary power to keep his property insured and to select the insurer ordinarily is deemed to have power to cancel or request cancellation of an insurance policy, provided the course of dealing between the parties justifies the inference of that authority, although it has been held that, where a cardinal purpose of the agency is to keep insured's property insured, the general authority of the agent to procure insurance will not be construed as containing an implied authority to cancel existing insurance without replacing the coverage by another policy." (Emphasis supplied.)
Recently, a sizeable number of the cases and authorities bearing on the question presently before this Court were collected and analyzed in Farrar v. Mayabb (Mo. Ct. App. 1959), 326 S.W.2d 337. The Missouri Court noted:
"We have examined a number of the cases which hold that the appointment of an insurance broker as `general agent' to maintain insurance in force carries with it authority to receive notice of cancellation. * * * While the holdings in all the cases cannot be reconciled, we are impressed by the fact that they fall generally into two main classifications, *706 (a) where the insured is a corporation or business house and the very necessities of the situation cry out for, and the conduct of the parties proclaims, an agency with complete power to represent the company in all matters pertaining to insurance coverage, (b) (and these are numerous) where the acceptance of notice of cancellation is but one step in the procurement of (other) satisfactory insurance. [Emphasis in text.] In many of these cases the question was whether a (later) policy was valid, and that depended upon whether the first coverage still existed. The `implied authority' in this situation is upheld in order that the broker or agent can carry out his authority to secure satisfactory insurance. But it is further held that where the receipt of notice of cancellation is not for the purpose of replacing with other satisfactory insurance so as to `maintain' the coverage, and the effect of the acceptance of such notice reaches to the end of doing the insured out of his coverage, as was done in this case, then the authority to waive or receive cancellation notice is not implied." (At 342-343; emphasis supplied.)
A similar limitation on an insurance broker's implied authority to effect cancellation was adhered to in Tarleton v. DeVeuve, 113 F.2d 290, 132 A.L.R. 343 (9 Cir.1940), and Security Nat. Fire Ins. Co. v. Gulf Ins. Co. (Com.App.Tex. 1931), 41 S.W.2d 17. See also, Hartford Fire Ins. Co. v. McKinley (Fla. 1918), 74 Fla. 186, 77 So. 226, implicitly recognizing the limitation where the question was whether the replacement or substitute policy was valid.
From the foregoing cited authorities we conclude that when an insurance broker is entrusted essentially with the duty of keeping property insured for a designated amount, his implied authority to accept cancellation notice on behalf of the insured is measurably limited by the degree of compliance with the duty owed the insured. This, where the agency relationship between broker and insured is circumscribed by the understanding that the agent will keep the insured's property protected for a designated amount, cancellation or acceptance of cancellation notice, unattended by the procurement of replacement or substitute coverage for a like amount, is a significant departure from the trust or duty owed the insured and for this reason cannot be deemed authorized. In such a situation we readily acknowledge that a broker or agent may be vested with very broad discretion as to the particular manner and means by which the basic purpose of the agency relationship might be best effectuated. Accordingly, we have little doubt that the agent may be impliedly authorized to substitute the insured's coverage and do other things necessary and incident to keeping the desired coverage in force, including the replacement of cancelled policies. However, the authority to keep insurance in force up to a designated amount does not concomitantly imply authority to effect cancellation when the same results in increasing the insured's risk of loss because of the failure to procure satisfactory substitute or replacement coverage. An act resulting in such increased risk of loss to the insured cannot logically be said to be impliedly authorized unless the discretion to incur such risk can reasonably be said to be vested in the agent. The duty or trust merely to keep the insured's property covered for a designated amount of insurance does not clothe an agent with the discretion to pursue a course of action attended by the inevitable result of increased risk of loss to the insured. Accordingly, the receipt of cancellation notice in such a situation, unaccompanied by satisfactory replacement insurance, is by its nature an incomplete response to the duty or trust owed to the insured and thereby must be considered unauthorized.
In adopting the view that the authority of a broker to accept cancellation notice must be construed and adjudged in light of the degree with which the results of such cancellation comply with the circumscribing *707 purpose of the agency relationship, we are encouraged not only by the reasoning of the authorities cited above, but also by the dictates of public policy. As noted previously, cancellation notice is designed to afford the insured a timely period in which he can take the necessary precaution to alleviate the risk produced by the insurer's unilateral right to cancel insurance in force. Balancing the ease with which an insurer can adopt effective means to communicate such notice to the insured personally (see Service Fire Ins. Co. of N.Y. v. Markey (Fla. 1956), 83 So.2d 855, and Aetna Cas. & Sur. Co. v. Simpson (Fla.App. 1961), 128 So.2d 420) against the serious nature of the risk created when the insurer chooses or relies on less direct methods of effecting notice of cancellation, public policy clearly commands a preference for the former. Accordingly, when an insurer chooses to rely on a disclosed agent's implied authority to accept cancellation notice, while at the same time being availed of easily utilized means appropriate to more directly inform the insured of a decision to cancel insurance in force, certainly it is not unconscionable to test the sufficiency of the less direct and inferior method of effecting the critical notice against the bare realities resulting from the insurer's resort to such an alternative method. If the notice of cancellation is conveyed by the broker to the insured, or if the agent acts to procure substitute insurance for the coverage sought to be cancelled, the method selected by the insurer has not in fact resulted in compounding the risk to the insured and therefore will be deemed sufficient. On the other hand, if no such action is taken by the broker, the insurer's resort to the less direct method has precipitated a situation embracing potential and likely unavoidable risk to the insured. Had the insurer employed a more direct method of notifying the insured, there is greater likelihood that the insured would incur such risk only after an informed exercise of discretion and choice.
From the foregoing cited authorities and reasoning, we conclude that the District Court erred in affirming a directed verdict in favor of Respondent. The question of an insurance broker's implied authority to accept cancellation notice on behalf of the insured is primarily a question of fact to be determined by the jury. The above authorities indicate that the degree of authority conferred on the agent is the controlling test and the measurement of this authority is peculiarly within the province of the trier of fact.
Applying the above principles to the present case, if the trier of fact should determine that the agency relationship between Petitioner and Hurst was circumscribed by the understanding that Hurst was authorized essentially to keep the property of Petitioner covered by insurance in a designated amount, then it follows that Hurst was not authorized to accept notice of cancellation. Under this disposition, Respondent would be liable to the extent that substitute insurance was not procured to replace the coverage with Respondent. We note parenthetically that a question of fact would seem to be raised regarding the determination of whether the $30,000 of insurance obtained by Hurst after Respondent's notice of cancellation was procured for the purpose of replacing the cancelled insurance or whether the procurement of that insurance was secured independently of any purpose to replace cancelled insurance. This question can best be resolved by the trier of fact after studious analysis of the events and circumstances surrounding its procurement.
On the other hand, if the trier of fact determines that the agency relationship between Petitioner and Hurst was essentially unlimited, that for all intents and purposes Hurst was the alter ego of Petitioner in handling the latter's insurance matters, including the exercise of discretion encompassing an increased risk of loss to Petitioner, then a sufficient basis would be established for applying the rule adhered to by the District Court.
*708 Because of the disposition of this controversy as above indicated, we find it is not necessary to examine other questions raised by the parties. We note particularly that the view we adopt herein preempts questions pertaining to ratification and renders that issue illusory.
The portion of the District Court's decision affirming a directed verdict in favor of Respondent is vacated and the cause is remanded for a new trial in accordance with the views expressed herein.
It is so ordered.
ROBERTS, DREW and THORNAL, JJ., concur.
CALDWELL, C.J., and THOMAS and ADAMS, JJ., dissent.