964 So.2d 269 (2007)
Delores GRAHAM, Appellant,
v.
LLOYD'S UNDERWRITERS AT LONDON, Appellee.
No. 2D06-3621.
District Court of Appeal of Florida, Second District.
September 19, 2007.
*271 Matthew D. Pardy of Kim, Pardy & Rodriguez, P.A., Orlando, for Appellant.
Neil Bayer of Sarnoff & Bayer, Coconut Grove, for Appellee.
PER CURIAM.
Delores Graham appeals the trial court's order granting final summary judgment in favor of her insurer, Lloyd's of London. Lloyd's denied coverage for damages to Ms. Graham's Naples home sustained during Hurricane Charley on August 13, 2004, based on its assertion that Ms. Graham had made a material misrepresentation in her application for insurance coverage. Because there are unresolved genuine issues of material fact in this case, we reverse the summary judgment entered in favor of Lloyd's and remand for further proceedings.
In June 2004, Ms. Graham applied for homeowner's insurance through the John Lee Insurance Agency, an independent agent in Naples, Florida. The application contains an entry indicating that the home is three miles from the "gulf." Mr. Lee submitted the application to The Levings Group (Levings), the surplus lines agent for Lloyd's Underwriters at London (Lloyd's). On June 10, 2004, Levings issued a binder for coverage of Ms. Graham's home, with coverage effective as of June 9, 2004. A policy was subsequently issued which included windstorm coverage. Shortly after issuing the policy, Levings had the home inspected by an independent inspector. That inspector reported that the home was one and one-quarter miles from the gulf.
Lloyd's alleges that on July 12, 2004, it sent a letter to John Lee Insurance stating that based on the inspection report, "please send endorsement request to increase coverage to $150,000 and X-wind[1] or send proof of replacement cost and distance to coast." This document contains the word "FAX" at the top and is dated July 12, 2004, but contains no facsimile time or date markings or a fax confirmation report.
Lloyd's also alleges that on August 11, 2004, it sent another letter to Mr. Lee discussing the "X-wind" problem. However, the typed portion of this letter discusses only the increased replacement cost and *272 does not mention the "X-wind" problem at all. At the bottom of the letter is a handwritten notation stating, "[h]ome needs to be X-wind. Inspection report states home is 1¼ miles to the gulf." No evidence was presented as to whether the handwritten entry was added to the letter prior to the time it was allegedly sent or who wrote it. More importantly, the record does not establish whether either of the above-mentioned documents were ever actually faxed or mailed to John Lee Insurance. Mr. Lee was never deposed nor was the individual who allegedly sent the letters. Ms. Graham contends that she had never seen either of these letters and was never informed of their existence by Mr. Lee, assuming that he did get them.
On August 13, 2004, Hurricane Charley struck the gulf coast of Florida causing damage to Ms. Graham's home. Three days after the hurricane, on August 16, 2004, Levings sent Mr. Lee a change endorsement deleting wind damage coverage from Ms. Graham's policy. Meanwhile, having suffered wind damage from Hurricane Charley, and purportedly without notice that her policy would not cover damage caused by the hurricane, Ms. Graham submitted a claim. Lloyd's denied the claim on the basis that wind damage was excluded. Ms. Graham filed suit. The trial court ordered the parties to nonbinding arbitration. The arbitrator found that (1) there was a material ambiguity in the homeowner's policy application with respect to the definition of "gulf and/or distance to gulf," (2) Lloyd's waived its coverage defenses by failing to notify its insured after having actual or constructive knowledge of the (alleged) actual distance to the gulf for more than thirty days[2] prior to the date of the loss, and (3) Ms. Graham's losses were covered losses under the policy of insurance. After the arbitrator issued his decision in favor of Ms. Graham, Lloyd's filed a motion for trial de novo, which the trial court granted. Lloyd's then filed a motion for summary judgment based on its assertion that Ms. Graham had made a material misrepresentation in her application with regard to the distance to the gulf. After a hearing, the trial court granted the motion.
We review a trial court's grant of a party's motion for summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000). Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c). The burden is on the moving party to show conclusively that the nonmoving party cannot prevail. Gomes v. Stevens, 548 So.2d 1163, 1164 (Fla. 2d DCA 1989). "If the record reflects the existence of any genuine issue of material fact, or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper." Id. "The presumption of correctness generally *273 applicable to all orders subject to appellate review is relatively weak in review of a summary judgment because the appellate court is in no less of a position than the trial court in reviewing documentary evidence." Poe v. IMC Phosphates MP, Inc., 885 So.2d 397, 400-01 (Fla. 2d DCA 2004).
The basis of Lloyd's motion for summary judgment was its assertion that Ms. Graham indicated in her insurance application that her home was three miles from the gulf, when in fact it was less than two miles from the gulf. Lloyd's asserts that this is a misrepresentation material to the risk and that it would not have issued the policy with wind damage coverage had the true facts been known.[3] Ms. Graham disputes the calculation of the actual distance, asserts that the application language is ambiguous, and alleges that Lloyd's waived any defenses to coverage by sitting on its knowledge of the claimed defense for over a month and failing to notify her of the coverage question and/or failing to issue a change endorsement until after the hurricane had passed.

DISTANCE TO THE GULF
Lloyd's relied on the report of an independent inspector who indicated that he measured the distance on a map and came up with one and one-quarter miles. During his deposition, the inspector stated that he also drove to the beach from Ms. Graham's home and found the distance to be about one and one-quarter miles. However, Ms. Graham points out that the inspector, by his own admission, had stopped at Clam Beach Park, which is as far as one can go by car on that route. According to the testimony and affidavit of another witness, the distance to the actual shoreline from where the Lloyd's inspector stopped is another three-quarters of a mile. Thus, argues Ms. Graham, even by Lloyd's agent's attempt to drive to the beach, the distance is at least two miles. She contends that because Lloyd's would have issued the policy as long as the distance was over two miles, any misrepresentation which might be attributed to Ms. Graham's claim that her home was three miles from the gulf instead of two would not be material to the risk.
Following arguments of counsel, the trial court announced it was granting the motion for summary judgment but the court did not explain its decision. The written order contains no findings of fact or conclusions of law. No evidence as to the actual distance was presented during the hearing on the motion for summary judgment, and the depositions and affidavits attached to the pleadings contain contrary claims.
Whether Ms. Graham's answers to questions on the application for insurance constituted misrepresentations is normally a question for the finder of fact. "[T]he insured's representations normally constitute a disputed issue of fact for the trier of fact's resolution regardless of how obviously false or material the representations may be." Anderson v. Armor Ins. Co., 674 So.2d 174, 175 (Fla. 2d DCA 1996) (citing Beneby v. Midland Nat'l Life Ins. Co., 402 So.2d 1193 (Fla. 3d DCA 1981)). When the evidence is not conclusive, the accuracy of the answers given by the insured and the insured's misrepresentations are matters of fact for the jury's determination. Id. (citing Patterson v. Cincinnati Ins. Co., 564 So.2d 1149, 1151 (Fla. 1st DCA 1990)). Although Lloyd's asserted that Ms. Graham's home was less than two *274 miles from the gulf, because the actual distance to the shoreline from Ms. Graham's home is still in dispute, this question remains a disputed issue of material fact.

AMBIGUITY
Ms. Graham also contends that the application is ambiguous. The application asks only, "distance to gulf." It does not explain the meaning or purpose of this question or spell out the means by which the applicant is to determine or estimate the distance. Ms. Graham testified that she did not know any other way to calculate that distance other than according to her own experience driving (and on one occasion walking) there. Lloyd's counters that there is only one logical interpretation of this question on the application, which is that it seeks the "as the crow flies" distance to the shoreline for purposes of determining eligibility for wind damage coverage. Ms. Graham responds that she is not sophisticated in insurance matters and had no way of knowing the importance of this question or its meaning.
We agree that the question as presented on the application is ambiguous and susceptible to differing interpretations. It is undisputed that there is no direct route of travel from Ms. Graham's home to the shoreline. We question whether the average person in Ms. Graham's position should know that she must measure the distance to the shoreline "as the crow flies" or even know how to accomplish such a measurement, as opposed to simply relying on her experience traveling the shortest route thereto or estimating that distance.
After all, the man on the street purchases his insurance policy in very much the same way that he purchases his automobile or his reaper or other chattels. He knows no more about the making of a contract of insurance than he does about the making of an automobile, and he naturally relies upon the skill and good faith of those who hold themselves out to be experts in such matters, by advertising their wares for sale. It would seem to be the clear duty of the insurer, professing to draw an instrument protecting the applicant's property against certain defined perils, to exercise due diligence to supply a policy which will effect the purpose intended. Any damage caused to the applicant through the agent's mistakes or negligence in making inquiries that he should know to be pertinent should rest on the insurer.
Am. S. Life Ins. Co. v. Hardy, 202 So.2d 98, 102 (Fla. 4th DCA 1967) (Cross, J., dissenting) (quoting Vance on Insurance, § 89 (3d ed.1951)), quashed, 211 So.2d 559, 561 (Fla.1968).[4]
Ambiguities in an application for insurance are construed liberally in favor of the insured and strictly against the insurer who prepared the policy. See Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993). Where the terms of a contract are disputed and reasonably susceptible to more than one construction, an issue of fact is presented which cannot properly be resolved by summary *275 judgment. Chhabra v. Morales, 906 So.2d 1261, 1263 (Fla. 4th DCA 2005); Strama v. Union Fid. Life Ins. Co., 793 So.2d 1129, 1132 (Fla. 1st DCA 2001).
We conclude that because reasonable persons could disagree as to the meaning of the distance question as stated on the application or on how to measure that distance, summary judgment was inappropriate.

NOTICE & WAIVER
Ms. Graham contends she never received notice of Lloyd's intention to cancel the wind damage coverage in her policy. Lloyd's contends that it notified Mr. Lee of the problem and that Mr. Lee was Ms. Graham's agent; therefore, notice to Mr. Lee was effective as notice to Ms. Graham. Ms. Graham denies that Mr. Lee was her agent and further argues that, if anything, Mr. Lee was Lloyd's agent.
We first note that once Lloyd's had knowledge of a possible defense to the wind damage coverage provision of the policy, it had a duty to notify Ms. Graham of its intention to cancel that coverage in her policy. Cat 'N Fiddle, Inc., v. Century Ins. Co., 213 So.2d 701, 704 (Fla.1968); Best Meridian Ins. Co. v. Tuaty, 752 So.2d 733, 735 (Fla. 3d DCA 2000). Whether notice to Mr. Lee constituted effective notice to Ms. Graham depends on whether Mr. Lee was Ms. Graham's agent. Although a broker is usually considered the agent of the insured during the process of procuring insurance, Amstar Ins. Co. v. Cadet, 862 So.2d 736, 740 (Fla. 5th DCA 2004), once the policy has been issued, the relationship between the insured and the broker is severed. See Cat 'N Fiddle, 213 So.2d at 704-05.
[W]hen an insurer has failed to give personal notice to the insured, but seeks nevertheless to establish cancellation on the theory that it effected notice to the insured's agent, it is incumbent on the insurer to demonstrate that the scope of the agent's authority encompassed the authority to perform the act sought to be charged to the agent's principal.
Id. In order to establish the existence of an agency relationship, three elements are necessary: (1) acknowledgement by the principal that the agent will act on his or her behalf, (2) acceptance by the agent, and (3) control by the principal over the agent's actions. Amstar, 862 So.2d at 741. Alternatively, "such authority may be presumed from a long course of dealing between the parties." Cat 'N Fiddle, 213 So.2d at 704. In this case, the record contains no evidence confirming an ongoing agency relationship between Ms. Graham and Mr. Lee. Ms. Graham testified in deposition that she did not know Mr. Lee at all and only chose his insurance agency to obtain the insurance because of its proximity to her home.
It is a well-settled rule that a broker or agent employed by an owner to procure a policy of insurance on property is not authorized to accept notice of the cancellation of such policy. His employment is at an end when he procures the insurance, and the subsequent notice to him by the insurance company of the cancellation of its policy is no notice to the insured.
Cat 'N Fiddle, 213 So.2d at 704 (quoting Stuyvesant Ins. Co. v. Barkett, 226 Ky. 424, 11 S.W.2d 87, 89 (1928)).
Finally, the fact that Levings was apparently relying on Mr. Lee to submit the requested change endorsements arguably reflects that it considered Mr. Lee its agent, not Ms. Graham's. Indeed, it is unclear why Levings requested that Mr. Lee prepare a change endorsement to the policy when it appears that Levings, as Lloyd's agent, had full authority to issue *276 the necessary changes unilaterally without consulting Mr. Lee. In fact, Levings finally did issue the change endorsement on August 16, 2004, three days after Hurricane Charley had done its damage.
We conclude that Lloyd's has failed to prove that Mr. Lee was Ms. Graham's agent for the purpose of Lloyd's notice of its intent to cancel the wind damage coverage of her homeowner's policy. In addition, as noted above, the record does not conclusively establish that Lloyd's actually notified Mr. Lee of the problem.

WAIVER
Ms. Graham contends that by failing to give notice for over sixty days and waiting until after the hurricane had passed to issue the policy change endorsement, Lloyd's waived its defense to the wind damage coverage.
[A]n insurance company should not be permitted to lull the assured into a false sense of security by accepting premiums after knowledge, either actual or constructive, of facts sufficient to avoid the policy, and then when the risk eventuates assert as a basis for escape from liability the existence of facts or conditions of which they were, or should have been, previously aware.
Hardy, 211 So.2d at 561 (citing Johnson v. Life Ins. Co. of Georgia, 52 So.2d 813, 816 (Fla.1951)). "[I]t is equally well settled in insurance law that, when an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof." Johnson, 52 So.2d at 815.
Ms. Graham has raised a legitimate question of waiver and estoppel. The policy was issued with an effective date of coverage of June 9, 2004. The inspection report noting the distance discrepancy was prepared June 27, 2004.[5] According to the record, Lloyd's first alleged attempt to notify Mr. Lee of the problem was July 12, 2004. Its second alleged attempt to communicate with Mr. Lee was August 11, 2004. It was not until August 16, 2004, over two months since the issuance of the policy and three days after Hurricane Charley hit that Lloyd's issued the coverage change endorsement. As noted above, neither our statutes nor our case law define what would constitute waiver under the facts of this case. Ms. Graham also asserts that had she been given timely notice of the wind damage coverage issue, she may have been able to secure other coverage before the hurricane hit. Therefore, whether Lloyd's actually waived its coverage defense in this case is a question for the finder of fact which cannot be resolved in a summary judgment proceeding. Mut. of Omaha Ins. Co. v. Eakins, 337 So.2d 418, 419-20 (Fla. 2d DCA 1976); Woodruff v. Gov't Employees Ins. Co., 669 So.2d 1114, 1115 (Fla. 1st DCA 1996).
Based on the above, we conclude that there are unresolved issues of material fact in this case with regard to actual distance, ambiguity of the "distance" provision in the application, notice, and waiver; all of which should have precluded summary judgment. We therefore reverse the trial court's grant of summary judgment in favor of Lloyd's and remand for further proceedings consistent with this opinion.
Reversed.
*277 STRINGER and SILBERMAN, JJ., and GROSS, RAYMOND O., Associate Judge, Concur.
NOTES
[1] "X-wind" appears to mean "delete wind damage coverage."
[2] We can find no statutory or other legal basis establishing thirty days as a waiver of a coverage defense in a first party claim such as this one. Section 627.426(2)(a), Florida Statutes (2004), provides that a liability insurer may not deny coverage based on a particular coverage defense unless, within thirty days after the liability insurer knew or should have known of the defense, written notice of reservation of rights to assert the defense is given. There is no corresponding statute applicable to first party property damage claims. Since the period of time in question in this case was over thirty days, we assume this was simply the period of time the arbitrator felt was sufficient to establish waiver under the facts of this case.
[3] Lloyd's underwriting guidelines prohibit underwriting wind damage coverage for homes within two miles of the shoreline.
[4] Hardy involved an alleged misrepresentation on an application for insurance as to the health of the insured. When the insured died the insurer denied coverage. The trial court directed a verdict in favor of Hardy. American Southern appealed. The Fourth District held that "[t]he insured was not in good health and in the absence of a showing of waiver or estoppel on the part of the company, the policy never became effective," 202 So.2d at 100, and reversed the trial court, directing judgment in favor of the insurer. Judge Cross dissented. The supreme court, in quashing the Fourth District's decision, specifically agreed with Judge Cross's dissenting opinion.
[5] The actual date the report was forwarded to the Levings Group is not clear from this record, although the president of the Levings Group testified it must have been received before July 12, 2004.