377 So.2d 973 (1979)
Diane PIKE, Cynthia Pike, Robert Pike, Jr., and Jonathan Pike, Appellants,
v.
NATIONAL FIDELITY LIFE INSURANCE COMPANY, Etc., Appellee.
No. 78-2157.
District Court of Appeal of Florida, Third District.
October 23, 1979.
Rehearing Denied November 28, 1979.
*974 Frates, Floyd, Pearson, Stewart, Richman & Greer and Bertha Claire Lee and S. Daniel Ponce, Miami, for appellants.
Fowler, White, Burnett, Hurley, Banick & Knight and Michael J. Murphy, Miami, for appellee.
Before HAVERFIELD, C.J., SCHWARTZ, J., and MELVIN, WOODROW M. (Ret.), Associate Judge.
SCHWARTZ, Judge.
The beneficiaries of a $50,000 insurance policy issued by the appellee on the life of Dr. Robert Pike, Sr., appeal from a judgment entered against them after the trial court directed a verdict in favor of the carrier at the conclusion of the plaintiffs' case. The basis of the directed verdict was the determination that at the time of Dr. Pike's death, the policy had lapsed because premium payments had not been timely made. We reverse for a new trial on the ground that the appellants had established a prima facie case that the defendant had waived, or was estopped to claim non-payment because, subsequent to the alleged default, and upon the representation that such a payment would reinstate the policy, it solicited, accepted and did not return the premiums in question.
Viewed in the light most favorable to the plaintiffs, Gravette v. Turner, 77 Fla. 311, 81 So. 476 (1919), the record demonstrates that the defendant issued the policy in question to Dr. Pike on September 3, 1976. It called for monthly premiums of $209.07 due on the 25th day of each month, with a 31 day grace period as to each payment. It is undisputed that Pike did not make the payments required on September 25, or October 25, 1976. In early November he did forward the total amount required, but stopped payment on the check before it could be collected. Thus, there is little doubt that if nothing else had occurred, the policy would have lapsed for non-payment. But a decisive something else did occur. On November 24, 1976, the company sent Dr. Pike a letter which was introduced by the plaintiffs without objection and which forms the basis of their assertion of waiver and estoppel. Referring to the fact that premiums were due on "9-25-76 and 10-25-76," National Fidelity set forth two "conditions for acceptance of late payment premiums":
"1. Payment must be made during the Insured's lifetime and within 52 days of due date.
2. At least 2 monthly premiums MUST be remitted for premiums paid MONTHLY"[1]
*975 In fact, Dr. Pike complied with these self-described "conditions for acceptance" by mailing a check to the company for $936.28, or "two monthly payments" on December 14, 1976, which was "within 52 days of [the] due date," October 25, 1976. The company received the check on December 17, 1976, and did not return the proceeds to Dr. Pike at any time prior to his death which took place on December 26, 1976.[2]
It is clear that these events serve to invoke the rule that, as stated in Industrial Life & Health Ins. Co. v. Cofield, 110 Fla. 315, 148 So. 549, 550 (1933):
A forbidden act of the insured that leads to forfeiture, may, as distinguished from the waiver of the contractual clause itself as a part of the contract, be itself waived by acts or conduct of the insurer's representatives acting in a manner inconsistent and irreconcilable with the idea that a forfeiture has taken place.
Having actively induced and then accepted the payment of the otherwise past-due premiums upon the representation that fulfillment of the conditions which the company itself imposed would prevent a lapse, it cannot be heard now to say that the policy was not in effect because the September and October payments were not timely made. Peninsular Life Ins. Co. v. Howard, 72 So.2d 389 (Fla. 1954); Interstate Fire Ins. Co. v. Hamilton, 356 So.2d 1348 (Fla. 1st DCA 1978); Shaw v. Massachusetts Mutual Life Ins. Co., 298 So.2d 183 (Fla. 1st DCA 1974), cert. denied, 312 So.2d 759 (Fla. 1975); Insurance Co. of State of Pennsylvania v. Christian, 224 So.2d 343 (Fla. 1st DCA 1969), cert. denied, 226 So.2d 818 (Fla. 1969); Cosmopolitan Mutual Ins. Co. v. Kaye, 211 So.2d 60 (Fla. 3d DCA 1968); Security Life & Trust Co. v. Jones, 202 So.2d 906, 909 (Fla. 2d DCA 1967), cert. denied, 209 So.2d 672 (Fla. 1968); see also Hardy v. American Southern Life Ins. Co., 211 So.2d 559 (Fla. 1968); Johnson v. Life Ins. Co. of Georgia, 52 So.2d 813 (Fla. 1951).
On the other hand, none of the contentions of the appellee in support of the judgment below have merit. The insurer first points out that the November 24 letter stated that any payments would not constitute a "waiver ... in the event of any future default of premium payment," and, consequently, that the policy was properly deemed unenforceable because of the non-payment of the premium due on November 25, 1976. The short answer is that there was no "future default." By its own terms, the policy was still in effect on the date of the insured's death since it occurred on December 26, 1976, within the 31-day grace period. See 18 Fla.Jur. Insurance § 541 (1971).
The company next relies upon evidence that on November 29 and November 30, 1976, it sent separate "policy service memos" to Dr. Pike which indicated respectively[3] (a) that he was required to execute an application for reinstatement of the policy[4] and (b) that the policy had expired "as of 9-28-76." The memos obviously contradicted not only each other but, more importantly, *976 the November 24 letter upon which the insured thereafter relied. Under these circumstances the directed verdict may not be sustained on the basis of the November 29-30 communications[5] which served to indicate only that the company's right hand computer did not know what its left hand computer had already done. This is so because as in the case of the terms of an insurance policy itself, see Ellenwood v. Southern United Life Ins. Co., 373 So.2d 392 (Fla. 1st DCA 1979), any ambiguity or contradiction in an insurer's multiple requests for payment or notices of cancellation must be resolved against the company. Auvil v. Nationwide Mutual Fire Ins. Co., 222 So.2d 46 (Fla. 3d DCA 1969), cert. denied, 229 So.2d 870 (Fla. 1969); Mitchell v. Burnett, 1 Ill. App.3d 24, 272 N.E.2d 393 (1971). The application of this rule effectuates the November 24 letter, to the exclusion of the later ones. Moreover, the acceptance and retention of Dr. Pike's check on December 17, after the memos of both November 29 and November 30, may be deemed to have waived the provisions of those communications. See Hardy v. American Southern Life Ins. Co., supra; Johnson v. Life Ins. Co. of Georgia, supra; 18 Fla.Jur. Insurance § 661 (1971).[6]
Finally, it is claimed that the plaintiffs may not rely on the company's claimed waiver or estoppel because they did not, under Fla.R.Civ.P. 1.100(a), assert the claim in a reply to the defendant's allegation in its answer "that the subject policy lapsed for non-payment of premium." Particularly since this statement was not denominated as an "affirmative defense," we doubt that any such reply was initially required as a matter of proper pleading. See Ins. Co. of State of Pennsylvania v. Christian, supra; cf. Moore Meats Inc. v. Strawn, 313 So.2d 660 (Fla. 1975); Maszewski v. Piskadlo, 318 So.2d 226 (Fla. 2d DCA 1975) (dissenting opinion). Even if it were, however, the evidence which served to raise the issues, including the documents to which we have referred, was all admitted without objection by the defendant. Waiver and estoppel were therefore obviously tried by the "implied consent of the parties," and are therefore properly "treated in all respects as if they had been raised in the pleadings." Fla.R.Civ.P. 1.190(b); Vanguard Construction Co., Inc. v. Lewis State Bank, 348 So.2d 72 (Fla. 1st DCA 1977); Titusville Enterprises, Inc. v. Newkirk, 205 So.2d 16 (Fla. 4th DCA 1967). Even assuming arguendo that a formal amendment to the pleadings was appropriate, there was no basis, in view of the manifest lack of prejudice to the defendant, for the trial court's failure to grant the plaintiff's motion to do so below. Fla.R.Civ.P. 1.190(a), (e); Florida Sunshine Coast Development Co., Inc. v. McClung, 352 So.2d 154 (Fla. 2d DCA 1977); Carmichael v. Shelley Tractor & Equipment Co., 300 So.2d 298 (Fla. 4th DCA 1974).
The judgment below is reversed and the cause remanded for a new trial.
Reversed and remanded.
NOTES
[1] The entire letter stated:

November 24, 1976 Policy Number: 335593
 Premium Due: 9-25-76 &
 10-25-76
 Amount $418.14
Robert E. Pike
30 S.E. 8 Street
Miami, Florida 33133 Mode: 2 Monthlies
 Returned unpaid: Payment
 Stopped

Your check, processed twice, has been returned unpaid by your bank for the reason shown above.
This means that your premium is unpaid, and any receipt issued is of no effect.
We are sure you agree this is valuable protection which should be continued. Every year your policy becomes more valuable and you do not want to lose this coverage.
The policy grace period expires 31 days from the premium due date.
The conditions for acceptance of late premium payments are shown below.
Please forward us a remittance immediately in the enclosed postage paid return envelope.
CONDITIONS FOR ACCEPTANCE OF LATE PAYMENT
1. Payment must be made during the Insured's lifetime and within 52 days of due date.
2. At least 2 monthly premiums MUST be remitted for premiums paid MONTHLY.
Note: This does not extend the grace period nor is it a waiver of the terms of the policy in the event of any future default of premium payment.
In "explanation" of this letter, the company's representative at trial made the following incomprehensible statement:
"Now, we did extend an offer to reinstate the policy without evidence of insurability, up to the 52 days, which means that we would go beyond the grace period, and offer to reinstate the policy without evidence of insurability, but it does not extend the grace period."
[2] The money was not returned until March, 1977, after a claim on the policy had been made.
[3] The November 29 memo was from the company's accounting division; the one dated November 30, from its "policy advisory service."
[4] Dr. Pike did not in fact do so.
[5] As of the close of the plaintiffs' case, when the verdict was directed, there was no evidence even that Dr. Pike had actually received either memo.
[6] The appellee also refers to a letter, dated December 20, 1976, sent to its agent with regard to the policy in question. Since there is no indication that Dr. Pike was aware of its contents, the letter seems totally irrelevant to the issues in this case.