385 So.2d 1061 (1980)
DON SLACK INSURANCE, INC., Appellant,
v.
FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellee.
No. NN-50/T1-49.
District Court of Appeal of Florida, Fifth District.
June 11, 1980.
Rehearing Denied July 17, 1980.
*1062 Fred S. Disselkoen, Jr., of Duffett, Seps & Akers, Ormond Beach, for appellant.
Robert K. Rouse, Jr., of Smalbein, Eubank, Johnson, Rosier & Bussey, P.A., Daytona Beach, for appellee.
SHARP, Judge.
Don Slack Insurance, Inc., (the third party defendant and appellant) appeals the final judgment entered against it after a jury trial, on a cross claim filed by Fidelity & *1063 Casualty Company of New York (the third party plaintiff and appellee). We reverse the judgment because there is no basis in the record to hold the third party defendant liable to the third party plaintiff.
Thomas V. Wicker filed a complaint against Fidelity for insurance benefits due him under an insurance policy issued by Fidelity, after being in an auto accident on February 19, 1977. Fidelity claimed the insurance had been cancelled and was not in effect at the time of the accident. It also filed a third party complaint against Don Slack Insurance, Inc.
Fidelity notified Wicker on August 24, 1976, it intended to cancel his insurance policy for failure to pay premiums. On September 19, 1976, through Don Slack, an independent insurance agency, Wicker sent Fidelity a $50.00 check to reinstate the policy. The check was accompanied by Wicker's request to issue endorsements changing the vehicles covered under the policy. Fidelity sent Slack two endorsements implementing the requested changes, and Slack sent copies of them to Wicker. The endorsements were effective October 10, 1976  more than a month after the announced effective date of the cancellation. Wicker received no further communications from Fidelity or Slack, and he assumed the insurance police was reinstated.
On November 17, 1976, Slack received a form letter from Fidelity stating it was cancelling Wicker's policy "pro-rata" because of "nonpayment" of premiums, but without any reference to the endorsements or to Wicker's check. On December 3, 1976, Slack received a "return of premium statement" from Fidelity regarding Wicker, showing $105.00 "earned" premium, $64.00 "unearned premium," and $40.00 to be returned. On December 10, Slack received a check from Fidelity in the amount of $40.00 payable to Wicker. Slack endorsed the check and deposited it in the business account. At the trial, Slack testified he realized Fidelity was refusing to reinstate the policy for Wicker, and that normally he should have contacted Wicker. He thought he had notified Wicker, but apparently Wicker received no such communication from him.
The jury returned a verdict for Wicker against Fidelity. The basis for this verdict is clear and is adequately supported by the record. Fidelity's endorsements of the policy after its notice of cancellation, making the requested changes in coverage and showing a new effective date for the endorsements of "10/10/1976 to 2/26/1977," was tantamount to a reinstatement of the policy. See Prudential Ins. Co. of America v. Seabrook, 366 So.2d 482 (Fla. 1st DCA 1979). Fidelity's later notice to Slack attempting to cancel the policy was legally ineffective.[1]
The jury also returned a verdict for Fidelity against Don Slack Insurance, Inc., thereby shifting the loss from the insurance company to the independent insurance agent who obtained the policy initially for the insured. In order to sustain this judgment, there must be some basis in the record to sustain the liability of Slack to Fidelity. Food Fair Stores of Florida, Inc. v. Sommer, 111 So.2d 743 (Fla. 3d DCA 1959); Madden v. Gorum, 250 So.2d 342 (Fla. 1st DCA 1971). Fidelity claimed it was entitled to "indemnity" from Slack because of Fidelity's undertaking to insure Wicker. But insurance agents are not automatically indemnitors for the insurance companies with whom they place insurance coverage for customers, and there is no evidence of any written or oral agreement by Slack to indemnify Fidelity.
Fidelity also argued Slack made negligent misrepresentations to it that Wicker had been informed of Fidelity's attempted cancellation. Essential elements of the tort of misrepresentation are the making of a false statement by the tort-feasor and reasonable reliance thereon by the injured party. But the record shows no communications or representations were made by Slack to Fidelity after Slack became aware of Fidelity's attempt to cancel *1064 Wicker's policy for failure to pay premiums a second time.
A person acting in a fiduciary or confidential capacity has a duty to make a full and fair disclosure of material facts to a person reposing confidence in him. Ramel v. Chasebrook Construction Company, 135 So.2d 876 (Fla. 2d DCA 1961). In this case Slack might have owed such a duty to Wicker, but that does not entitle Fidelity to automatically bootstrap onto Wicker's cause of action.[2]
Two further questions must be answered: did Slack owe Fidelity a duty to forward to the insured a defective notice attempting to cancel the insurance policy and did this failure (if it existed) contribute to Fidelity's liability to Wicker? The answer is clearly "no" to both. The record shows Fidelity failed to send a proper cancellation notice in the form required by section 627.728(3)(a),[3] Florida Statutes (1979) and the duty to send it to the insured cannot be delegated to an independent insurance agent such as Slack. Cat 'N Fiddle, Inc. v. Century Insurance Company, 213 So.2d 701 (Fla. 1968); Hunsucker v. Arrow Insurance, 242 So.2d 205 (Fla. 1st DCA 1970). See also Millers Mut. F. Ins. Co. of Texas v. American Fid. F. Ins. Co., 178 So.2d 742 (Fla. 3d DCA 1965). Even if Slack had sent Wicker the notice and check in November, it would not have altered Fidelity's liability on the insurance policy to Wicker and Slack's failures were not in any way the "cause" of Fidelity's liability to Wicker.
Because there is no plausible basis upon which to permit third party liability in this case that portion of the judgment is reversed. Boling v. Barnes, 198 So.2d 377 (Fla. 2d DCA 1967).
REVERSED.
DAUKSCH, C.J., and FRANK D. UPCHURCH, J., concur.
NOTES
[1] § 627.728(3)(a) Fla. Stat. (1979); Martin v. Ritcheson, 306 So.2d 582 (Fla. 1st DCA 1975).
[2] There was also no evidence Fidelity directed Slack to cancel the policy, so no direct duty on the part of Slack ever arose. 43 Am.Jur.2d Insurance §§ 171, 172 (1966); see Annot., 106 A.L.R. 1397 (1937).
[3] If an insurance company sends a notice of cancellation because of failure to pay premiums, and permits reinstatement, as it did in this case, it must send another proper cancellation notice upon further failure to pay premiums, and if there is no default after the reinstatement, cancellation is improper. Pike v. National Fidelity Life Ins. Co., 377 So.2d 973 (Fla. 3d DCA 1979). The situation in this case is like the one characterized by Judge Schwartz in the Pike case where "the company's right hand computer did not know what its left hand computer had already done." Id. at 976.