852 So.2d 882 (2003)
BACON FAMILY PARTNERS, L.P., a Colorado limited partnership, Appellant,
v.
APOLLO CONDOMINIUM ASSOCIATION, INC., a Florida not-for-profit corporation, Appellee.
No. 2D02-4991.
District Court of Appeal of Florida, Second District.
August 1, 2003.
*883 William G. Morris and John N. Jenkins of the Law Offices of William G. Morris, Marco Island, for Appellant.
Michael R. Whitt and Sanjay Kurian of Becker & Poliakoff, P.A., Fort Myers, for Appellee.
WALLACE, Judge.
This case involves a condominium dispute. The condominium association, the *884 Apollo Condominium Association, Inc., a Florida not-for-profit corporation ("the Association"), filed an action for injunctive relief and damages against one of the unit owners, Bacon Family Partners, L.P., a Colorado limited partnership ("Bacon"), over Bacon's use of a deck area in the operation of a restaurant. Bacon answered, raised various affirmative defenses, and counterclaimed for damages. The trial court ordered the parties to nonbinding arbitration. The arbitrator awarded injunctive relief to the Association, denied its claim for damages, and denied Bacon's counterclaim for damages. Bacon timely moved for trial on the limited issues of the Association's claim for injunctive relief and Bacon's counterclaim for damages. The trial court entered an order striking Bacon's motion for trial and granting a final judgment in accordance with the decision of the arbitrator. Because we find that the trial court erred in denying Bacon a trial on the issues specified in its motion for trial, we reverse the final judgment and remand this case for a trial on the limited issues specified in Bacon's motion.

FACTS
The Apollo Condominium ("the Condominium") is a mixed-use condominium located on Marco Island in Collier County, Florida. In January 1998, Bacon acquired the 150-seat restaurant and bar on the ground floor of the Condominium, designated as "Commercial Unit 500" ("the Unit"). Thereafter, Bacon operated the Unit as "The Tides Restaurant." There is a deck or patio area located directly to the west of and abutting the Unit. The deck faces the beach and the Gulf of Mexico. A bar located within the Unit is situated so as to allow service to customers on the deck as well as to patrons within the confines of the Unit. The dispute between the parties centered on Bacon's use of the deck.
Upon its acquisition of the Unit, Bacon placed tables and chairs on the deck and used it as part of its restaurant operation. The parties had extensive negotiations concerning improvements to the deck area to be constructed and paid for by Bacon and a lease of the deck area by the Association to Bacon. Nevertheless, no lease of the deck area was ever executed. Despite the absence of a lease, Bacon began the construction of an awning or roof over the deck. The Association, objecting that the construction was not being undertaken in accordance with plans previously submitted and approved, filed a complaint for injunctive relief against Bacon.

THE LITIGATION
The dispute between the parties spawned two civil actions, a mediation that resulted in an impasse, and an arbitration proceeding. In order to understand the issues raised in this appeal, a detailed outline of the procedural history of the litigation is necessary.

A. The Injunction Case
On June 7, 1999, the Association filed the first civil action, circuit court case number 99-1866-CA, against Bacon only. This action will be referred to as "the injunction case" to distinguish it from a second civil action the Association later filed against Bacon. In its amended complaint filed in the injunction case, the Association contended that the deck was part of the common elements of the Condominium and was thus owned by all of the unit owners at the Condominium in proportion to their undivided shares of the common elements. The Association asserted that Bacon had no right to exclusive control and use of the deck or to use the deck as part of its restaurant operation. The Association sought an injunction to terminate *885 Bacon's use of the deck, plus attorney's fees and costs.
Bacon answered the amended complaint, raised various affirmative defenses, and counterclaimed for damages. Bacon asserted, in pertinent part, that the deck was actually a "balcony" appurtenant to the Unit within the meaning of the Declaration of Condominium. The Declaration provided, in pertinent part, that "balconies" shall "constitute Limited Common Elements and, as such, are reserved for the use of the unit appurtenant thereto, to the exclusion of other units, and there shall pass with each unit as appurtenant thereto the exclusive right to use the Limited Common Elements so appurtenant." If the deck was a "balcony" appurtenant to the Unit, then Bacon had the right to its exclusive use. Bacon requested the denial of the Association's complaint for injunctive relief; Bacon also requested attorney's fees and costs. In an amended counterclaim ("the Counterclaim"), Bacon sought damages against the Association for increased construction costs, repair costs, and lost profits allegedly resulting from the Association's interference with the construction of the structure over the deck. The Association filed an answer to the Counterclaim that raised five affirmative defenses. It is significant to the subsequent procedural history of the case to note that Bacon filed a motion to strike all of the Association's defenses to the Counterclaim.

B. The Lien Foreclosure Case
During the course of the litigation of the injunction case, Bacon became delinquent on one or more of its assessments owed to the Association. On July 21, 2000, the Association filed a separate action against Bacon and three other parties to foreclose its claim of lien for condominium assessments. This action was assigned circuit court case number 00-2543-CA. It will be referred to as "the lien foreclosure case" in order to distinguish it from the already pending litigation designated as "the injunction case," which had previously been assigned circuit court case number 99-1866-CA.
Bacon filed an answer, affirmative defenses, and counterclaim to the lien foreclosure complaint. This pleading contained the correct party designation for the lien foreclosure case but incorrectly used the case number of the already pending injunction case. The clerk of the circuit court filed the pleading by case number in the injunction case.
Thereafter, the parties settled the lien foreclosure case and agreed to dismiss it. On September 20, 2000, pursuant to the settlement agreement, the Association filed its notice of voluntary dismissal and discharge of lis pendens in the lien foreclosure case. A few weeks later, on November 3, 2000, Bacon filed its notice of voluntary dismissal of counterclaim. This pleading, like Bacon's prior filing, bore the party designation of the lien foreclosure case and the case number of the injunction case. The clerk filed the notice by case number in the injunction case. At the time the papers were filed, neither the trial court nor the parties appear to have been aware of the confusion caused by Bacon's use of the incorrect case number on papers apparently intended to be filed in the lien foreclosure case.
It is significant that on December 1, 2000, the Association and Bacon filed a stipulation in the injunction case to remove that litigation from the trial calendar. The reason for removing the injunction case from the trial calendar was that Bacon's motion to strike the Association's affirmative defenses to the Counterclaim was still pending. Thus the case was not at issue and was not ready to be set for trial. The filing of this stipulation strongly suggests that in December 2000, both parties regarded *886 Bacon's notice of voluntary dismissal filed on November 3, 2000, as intended to cause the dismissal of Bacon's counterclaim in the lien foreclosure case, not in the injunction case.

C. The Arbitration Proceeding
After extensive pretrial proceedings and a mediation that resulted in an impasse, the trial court ordered the parties in the injunction case to nonbinding arbitration pursuant to section 44.103, Florida Statutes (2001), and Florida Rule of Civil Procedure 1.800.[1] The arbitrator conducted a hearing on February 26, 2002, and later received supplemental written submissions from the parties. In its posthearing written submission to the arbitrator, the Association took the position that the notice of dismissal filed by Bacon on November 3, 2000, resulted in the dismissal of the Counterclaim. Thus the Association argued that the arbitrator could not consider any evidence concerning the Counterclaim because Bacon had dismissed it in November 2000. On March 14, 2002, the Association served a copy of this written submission by mail on Bacon's counsel. Nevertheless, the Association's counsel informed this court at oral argument that he made no objection to the arbitrator's consideration of the Counterclaim for damages at the arbitration hearing.
In a detailed written decision dated March 25, 2002, the arbitrator found that the deck was neither part of the Unit nor a limited common element appurtenant to it. The arbitrator further ruled that the deck was part of the common elements and granted the Association's claim for injunctive relief as follows:
D. The ASSOCIATION is entitled to injunctive relief pursuant to Section 718.303(1), Florida Statutes. Defendant, BACON, and BACON'S partners, employees, agents, and others operating pursuant to BACON'S direction and control, are permanently enjoined from having and maintaining exclusive use and possession of the concrete deck area outside Commercial Unit 500. Defendant, BACON, is ordered to cease restaurant and bar operations on the deck area, other than service at the "outside bar," which is depicted as part of Unit 500 on the plans and surveys. BACON shall immediately remove all tables and chairs from the deck portion of the common elements. Defendant, BACON, shall refrain from any further use of the deck area, other than in accordance with Defendant's rights as an owner-in-common of a proportionate share of the common elements.
The arbitrator also expressly ruled on Bacon's claims for damages in the Counterclaim: (1) the arbitrator summarized the issues to be decided by him and included Bacon's claim against the Association for the cost of the improvements to the Unit and lost business income, (2) the arbitrator noted in his decision Bacon's itemization of its claims for damages against the Association totaling $104,895, and (3) the arbitrator ruled that Bacon was not entitled to recover any damages against the Association. The arbitrator further denied the Association's claim against Bacon for rent. Finally, the arbitrator ruled that the trial court should determine the parties' claims for attorney's fees and costs.

D. Postarbitration Proceedings in the Trial Court
After the entry of the arbitrator's decision, Bacon timely filed a motion for trial *887 pursuant to Florida Rule of Civil Procedure 1.820(h) on limited issues specified in the motion. These issues, as stated by Bacon in paragraph 2 of its motion, were as follows:
A. Whether the Plaintiff [the Association] is entitled to a permanent, mandatory injunction prohibiting the Defendant [Bacon] from conducting restaurant and bar operations on the deck area outside Commercial Unit 500, other than service at the outside bar, and mandating the removal of tables and chairs from any portion of the deck area, where the Defendant's [Bacon's] use of the deck area is not exclusive.
B. Whether this Defendant [Bacon] is entitled to relief as prayed for in its Counter Claim.
The Association moved to strike Bacon's motion for trial on the following grounds: (1) it was not timely filed, (2) the issue raised in paragraph 2(A) of the motion was not framed by the pleadings and was never raised as an affirmative defense by Bacon, and (3) the issue raised in paragraph 2(B) of the motion could not be considered because Bacon had dismissed the Counterclaim in November 2000. Then, on May 15, 2002, Bacon filed a "Motion to Set Aside Voluntary Dismissal of Counterclaim" pursuant to Florida Rule of Civil Procedure 1.540(a) and (b) on the asserted ground of inadvertence. Bacon also sought leave to amend its answer pursuant to Florida Rule of Civil Procedure 1.190(e) to add the Counterclaim inadvertently dismissed.
On September 17, 2002, after a hearing that was not reported, the trial court entered the final judgment in the injunction case, which is the subject of this appeal. In its final judgment, the trial court ruled that Bacon's motion for trial had been timely filed and denied the Association's motion to strike on that ground. Despite its ruling that Bacon's motion for trial was timely filed, the trial court granted the Association's motion to strike and ordered that Bacon's motion for trial would be stricken. The trial court then entered a final judgment thatwith a single exceptionenforced the arbitrator's decision. The arbitrator had denied Bacon the relief it had requested in the Counterclaim. Although the trial court adopted the arbitrator's findings of fact and conclusions of law, the final judgment did not expressly dispose of the Counterclaim. On September 17, 2002, the trial court also entered a separate order that denied Bacon's motion to set aside the voluntary dismissal of counterclaim and to amend its answer to add the Counterclaim. Bacon timely appealed the final judgment. The Association has not taken a cross-appeal from the trial court's ruling that Bacon's motion for trial was timely filed.

THE APPLICABLE STANDARD OF REVIEW
We find that the standard of review applicable to the denial of a timely request for a trial de novo following nonbinding arbitration should be de novo review. A trial court's decision to deny a trial to a party to nonbinding arbitration after the filing of a timely motion for trial presents a question of law that can be determined as well by an appellate court as a trial court. Cf. McKey v. D.R. Goldenson & Co., 763 So.2d 409 (Fla. 2d DCA 2000) (holding dismissal of complaint for failure to state a cause of action is a question of law reviewed on a de novo standard). In a related context, an order denying a motion to compel arbitration is generally reviewed on a de novo standard. See Stacy David, Inc. v. Consuegra, 845 So.2d 303, 306 (Fla. 2d DCA 2003). Without expressly addressing the point, the Fourth District appeared to use a de novo standard to review a trial court decision *888 dismissing a motor vehicle manufacturer's timely petition for an "appeal by trial de novo" of the decision of an arbitration board in a "Lemon Law" arbitration. T.A. Enters., Inc. v. Olarte, Inc., 835 So.2d 1235, 1240-41 (Fla. 4th DCA 2003).

THE LAW
The trial court had the authority to refer the injunction case to nonbinding arbitration pursuant to section 44.103, Florida Statutes (2001), and Florida Rule of Civil Procedure 1.800. After the completion of the arbitration proceeding and notice to the parties of the arbitrator's decision, the subsequent procedure is controlled by Florida Rule of Civil Procedure 1.820(h), which provides as follows:
Time for Filing Motion for Trial.
Any party may file a motion for trial. If a motion for trial is not made within 20 days of service on the parties of the decision, the decision shall be referred to the presiding judge, who shall enter such orders and judgments as may be required to carry out the terms of the decision as provided by section 44.103(4), Florida Statutes.
Thus a party has the right to move for a trial within twenty days after service of the arbitrator's decision. If no motion for trial is timely served, then the trial court must enforce the decision of the arbitrator and has no discretion to do otherwise. See Preferred Mut. Ins. Co. v. Davis, 629 So.2d 259, 260 (Fla. 4th DCA 1993); Klein v. J.L. Howard, Inc., 600 So.2d 511, 512 (Fla. 4th DCA 1992). A party may properly serve a motion for trial that specifies the part of the arbitrator's award which the party seeks to challenge. See Venetoff v. Papas, 732 So.2d 453, 454 (Fla. 2d DCA 1999).

ANALYSIS
The Association advanced three arguments in the trial court and on this appeal in support of the trial court's decision to strike Bacon's motion for trial and enter final judgment without further proceedings in the trial court. We will consider these reasons separately.

A. Trial Court Discretion
The Association argues that after the conclusion of nonbinding arbitration conducted pursuant to section 44.103 and rule 1.800, the trial court has discretion to consider and deny a party's timely motion for trial made pursuant to rule 1.820(h). We reject this argument. Nothing in the language of the statute or the rule supports the conclusion that the trial court has the discretion to deny a party's timely motion for trial. In a case involving an analogous arbitration scheme, the Fourth District held that the trial court erred in dismissing a motor vehicle manufacturer's timely petition for an "appeal by trial de novo" of the decision of an arbitration board in a "Lemon Law" arbitration conducted pursuant to chapter 681, Florida Statutes (2001). See T.A. Enters., 835 So.2d at 1240. In T.A. Enterprises, the Fourth District said that the existence of a process for review of the arbitration decision "contemplates that the appealing party has the right to offer evidence in support of its position." Id. at 1240. The existence of a process for a trial de novo of an arbitration award in nonbinding arbitration conducted pursuant to section 44.103 and rule 1.800 likewise contemplates that a party unwilling to accept the decision of the arbitrator has the right to a trial de novo.
We draw additional support for our conclusion from the purpose and informal nature of nonbinding arbitration. In this regard, the discussion of nonbinding arbitration by the Fourth District in Preferred *889 Mutual Insurance, 629 So.2d at 260, is instructive:
[I]n nonbinding arbitration under rule 1.820, Florida Rules of Civil Procedure, the procedure is quite informal, the rule encouraging restrictions on live testimony and placing primary emphasis on presentation through statements and arguments of counsel. Such a procedure simply does not suffice as a substitute for trial to which the parties are entitled.

(Emphasis supplied.) The Fourth District also noted in Preferred Mutual that an arbitrator's decision in nonbinding arbitration may be "`vacated' without any grounds whatever, upon the simple expedient of timely filing a request or motion for trial de novo." Id. at 260-61.
Moreover, a rule giving the trial court discretion to deny a party a trial after nonbinding arbitration would very likely constitute a denial of access to the courts in violation of article 1, section 21, of the Florida Constitution. See Chrysler Corp. v. Pitsirelos, 721 So.2d 710, 713 (Fla.1998) (holding compulsory arbitration of "Lemon Law" claims constitutional because of the right to a trial de novo appeal proceeding after completion of arbitration); Nationwide Mut. Fire Ins. Co. v. Pinnacle Med., Inc., 753 So.2d 55, 59 (Fla.2000) (holding PIP mandatory arbitration provisions unconstitutional as a denial of access to the courts). A construction of rule 1.820(h) that would give trial courts discretion to deny a timely motion for trial after nonbinding arbitration might call into question the constitutionality of nonbinding arbitration conducted pursuant to section 44.103 and rule 1.800. We decline to adopt such a construction of the rule.

B. The Injunction Issue
The Association contended in the trial court and argues here that the issue raised in paragraph 2(A) of Bacon's motion for trial could not "serve as the basis for de novo proceedings since the issue was not framed by the pleadings, and specifically was never raised as an affirmative defense by Defendant [Bacon]." According to the Association, if the issue was not properly framed in the pleadings before the arbitrator, it would not be appropriate for the trial court to consider it in a de novo trial.
The Association's argument on this point is not supported by the facts. The Association's amended complaint requested injunctive relief to prohibit Bacon from using the deck as part of its restaurant operation. Bacon's answer denied the Association's right to the injunctive relief requested. The arbitrator's decision considered the parties' contentions and awarded the Association the injunctive relief it had requested. We think it is immaterial whether Bacon raised the issue as an affirmative defense or as a denial of the Association's right to injunctive relief. Moreover, Bacon's right to a trial after nonbinding arbitration was not contingent upon the use of any particular formulation in its motion for trial. We think Bacon's motion for trial was adequate to inform both the Association and the trial court that it was requesting a trial on the issue of the injunctive relief awarded by the arbitrator to the Association.

C. Bacon's Counterclaim
The Association argued before the trial court and in this court that the issue raised in paragraph 2(B) of Bacon's motion for trial could not "serve as the basis for de novo proceedings as there is no counterclaim pending since the counterclaim was dismissed by Defendant [Bacon] in November, 2000." Because the Counterclaim had been dismissed, the Association reasoned, it was not properly before the *890 arbitrator and could not form the basis for a trial de novo in the trial court.
We hold that Bacon should have been allowed to proceed to trial on the Counterclaim in the trial court.[2] The issues raised in the Counterclaim were presented to the arbitrator and expressly ruled on by him. Therefore, the arbitrator treated the Counterclaim as having been tried by consent in the arbitration proceeding. In the case of Smith v. Mogelvang, 432 So.2d 119, 124-25 (Fla. 2d DCA 1983), this court listed a variety of factors to be considered in determining the existence or nonexistence of consent by a party to trial of issues not raised by the pleadings:
(1) Of course, the lack of a timely objection is the most significant factor, especially a failure to object on specific grounds that a newly inserted issue is beyond the scope of the pleadings.
(2) Another factor may be the technical or esoteric nature of the subject matter of the new issue and the corresponding difficulty for the opposing party to effectively cross-examine and respond with contrary evidence.
(3) Whether or not there was justification for the party who is attempting to insert the issue into the case to have failed to plead the issue is another possible factor.
(4) Whether the position taken by the party attempting to insert the issue into the case clearly appears to be meritorious may be an additional factor. See Beefy Trail, Inc. v. Beefy King International, Inc., 267 So.2d 853, 857 (Fla. 4th DCA 1972).
(5) A further factor may be whether there is sufficient time from when the issue is inserted into the case, or when there is clear notice that the issue will be inserted into the case, to the time when the opposing party has the opportunity to offer evidence, within which the opposing party may fairly be expected to prepare his position on the issue. See C.A. Davis, Inc. v. City of Miami, 400 So.2d 536 (Fla. 3d DCA 1981).
(6) The amount of the evidence on the issue to which the opposing party has made no objection may be an additional factor. See Pike v. National Fidelity Life Ins. Co., 377 So.2d 973, 976 (Fla. 3d DCA 1979).
(7) Another factor may be the degree of relevancy of the new issue to the pleaded issues in the case. Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., [366 So.2d 90, 92 (Fla. 1st DCA 1979) ]. However, any such relevancy by itself may well not be enough to establish implied consent to try the new issue, absent clear indications that the party introducing evidence was attempting to raise a *891 new issue. See International Harvester Credit Corp. v. East Coast Truck, [547 F.2d 888, 890 (5th Cir.1977) ].
(8) The degree, if any, to which the party opposing the new issues should have been aware of the potentiality of the issue in the case e.g., may be a factor, from prior discovery or from other pretrial proceedings. See Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436 (10th Cir.1979).
This list of potential factors is not exhaustive. In order to show implied consent, "the circumstances should establish lack of unfairness to, or some true acquiescence by, the party opposing the new issue." Mogelvang, 432 So.2d at 125.
The Association certainly knew from the pretrial proceedings that the issues raised in the Counterclaim were a significant factor in the case. The Association's knowledge in this regard also bears on the question of whether its objection to the arbitrator's consideration of the issues raised in the Counterclaim was timely made. In December 2000, approximately one month after the filing of Bacon's notice of voluntary dismissal, the Association entered into a stipulation with Bacon that treated the Counterclaim as if it were still pending before the court. The arbitration hearing was held on February 26, 2002. If the Association had changed its position concerning the effect of Bacon's notice of voluntary dismissal in the interim, the Association might have filed a motion pursuant to Florida Rule of Civil Procedure 1.700(b) to dispense with arbitration on the issues raised in the Counterclaim on the ground that the Counterclaim was no longer pending. This procedure would have given both the trial court and Bacon an opportunity to address the question prior to arbitration. At the very least, the Association ought to have raised its objection to arbitration of the issues raised in the Counterclaim during the hearing before the arbitrator. Under all the circumstances, the objection made in the Association's posthearing submission served on March 14, 2002, came too late.
After a consideration of all the circumstances, including the apparent inadvertent nature of Bacon's dismissal of the Counterclaim, we think it is reasonable to conclude that the Association tried the issues raised in the Counterclaim by consent before the arbitrator.[3] The arbitrator expressly considered and ruled on the issues raised in the Counterclaim. Therefore, Bacon was entitled to request a trial on *892 those issues pursuant to rule 1.820(h). The trial court should also have permitted Bacon to amend its answer to reallege the Counterclaim, which was then properly before the court to be tried. Fla. R. Civ. P. 1.190.
The decision in Metropolitan Dade County v. Molloy, 456 So.2d 1280 (Fla. 3d DCA 1984), cited by the Association in support of its position, is not to the contrary. The Molloy case involved a trial court decision that vacated an arbitration award made by the Dade County Grievance Appeal Panel. In pertinent part, the panel's award reduced the pay classification of Molloy, an employee. The trial court vacated the panel's award. The Third District affirmed the trial court's order to the extent that it vacated the portion of the panel's award which had reduced the pay classification of the employee. The Third District explained:
The correctness of Molloy's reclassification was not a necessary sub-issue to Molloy's entitlement to back pay, was not framed by the pleadings, tried by consent, or otherwise put into issue by Dr. Molloy and, therefore it was error for the grievance panel to decide this issue and reduce Molloy's classification as a result.
Id. at 1281 (emphasis supplied; citations omitted). In this case, unlike Molloy, the issues in question were tried by consent.

THE PROPRIETY OF THE INJUNCTION
Bacon also challenges on appeal the propriety of the trial court's final judgment enforcing the injunction awarded by the arbitrator in favor of the Association and against Bacon. Based upon our disposition of this case, we do not need to address this issue.

RELIEF
For the reasons outlined above, the final judgment is reversed and this case is remanded to the trial court for a trial on the issues raised in Bacon's motion for trial.
Reversed and remanded.
FULMER and SILBERMAN, JJ., concur.
NOTES
[1] The case was not referred to mandatory nonbinding arbitration pursuant to section 718.1255, Florida Statutes (2001). The dispute was between an association and the owner of a commercial condominium unit. Such disputes are not eligible for arbitration under section 718.1255 pursuant to Florida Administrative Code Rule 61B-45.013(8).
[2] We decline to find that the trial court committed error in denying Bacon's motion made pursuant to rule 1.540(a) and (b) to set aside the notice of voluntary dismissal. Bacon was not entitled to relief pursuant to rule 1.540(b) because it did not file its motion until approximately eighteen months after the filing of its notice dismissing the Counterclaim. Rule 1.540(b) provides an outside limit of one year within which to file a motion for relief grounded upon mistake, inadvertence, surprise, or excusable neglect. See Garvin v. S.C. Ins. Co., 528 So.2d 929, 930 (Fla. 2d DCA 1988); Freeman v. Sanders, 562 So.2d 834, 836 (Fla. 1st DCA 1990). Although relief from clerical mistakes may be sought "at any time" pursuant to rule 1.540(a), such relief is limited to errors committed by the court or the clerk. See DiPiazza v. Palm Beach Mall, Inc., 722 So.2d 831 (Fla. 2d DCA 1998); Howard v. McAuley, 436 So.2d 392 (Fla. 2d DCA 1983); State ex rel. Dep't of Transp. v. Hall, 247 So.2d 777 (Fla. 2d DCA 1971); Underwriters at Lloyd's London v. Rolly Marine Serv., Inc., 475 So.2d 265 (Fla. 4th DCA 1985). Bacon prepared and filed the notice of voluntary dismissal without court participation.
[3] One might take also the view that Bacon's notice of dismissal was not effective to dismiss the Counterclaim. The notice bore the correct party designation for the lien foreclosure case; only the case number was incorrect. If the clerk of the court had caught the error in the case number, as clerks frequently do, the notice would very likely have been filed in the lien foreclosure case as intended. This raises the question of which part of the case caption controls: the party designation or the case number? If the party designationand not the case numbercontrols, then the notice of dismissal could be seen as ineffective to effect the dismissal of the Counterclaim. Cf. Tanner v. State, 744 So.2d 1017, 1018-19 (Fla. 4th DCA 1997) (suggesting that clerk of court should consult alphabetical index in the event file number on paper tendered for filing does not correspond to clerk's records). In the alternative, the clerk's action in filing the notice in the injunction case could be regarded as a "clerical error" that might be corrected at any time pursuant to Florida Rule of Civil Procedure 1.540(a). Cf. Underwriters at Lloyd's London v. Rolly Marine Serv., Inc., 475 So.2d 265 (Fla. 4th DCA 1985).

In their papers filed in the trial court and before this court, both of the parties proceeded on the assumption that Bacon's notice of dismissal was effective to dismiss the Counterclaim. Therefore, we do not reach and expressly do not decide the issue of whether the notice of voluntary dismissal was actually effective to dismiss the Counterclaim.