912 So.2d 322 (2005)
Yvonne DUDLEY, Twanda M. Cole, Kimberly Duncan, Sonya A. Hayes-Joseph, Dudley Hearn, Jr., Debra Hearn, Henry C. Henley, Betty Ann Hull, Tony Jackson, Gail Jackson, Rhonda Johnson, Brenda Livingston, Windell Nelson, Sr., Iris Nelson, Samuel Opong Yao, Debra Williams Opong Yao, Leonard Snead, Edith Snead, Marsha Thomas, Jennifer Tillis, Quankela Tillman, Willie Tolbert, Willie Wilson, Donna Wilson, and Shirley Anderson, Appellants,
v.
CITY OF TAMPA and Tampa Hillsborough Action Plan, Inc., Appellees.
No. 2D03-5843.
District Court of Appeal of Florida, Second District.
May 13, 2005.
Rehearing Denied July 12, 2005.
*323 G. Luis Dominguez and Richard Guerra of Fowler Rodriguez & Chalos, Coral Gables, and Samuel R. Mandelbaum of Mandelbaum & Fitzsimmons, Tampa, for Appellants.
David L. Smith, City Attorney, and Jerry M. Gewirtz, Chief Assistant City Attorney, Tampa, for Appellee City of Tampa.
Warren Hope Dawson of Dawson & Associates, Tampa, for Appellee Tampa Hillsborough Action Plan, Inc.
CASANUEVA, Judge.
Appellants, residents of the Martin Luther King Village Subdivision in the City of Tampa, sued the City of Tampa and the Tampa Hillsborough Action Plan, Inc. [THAP] for negligence claiming that they and their homes have suffered substantial damage due to defective soil conditions of which the City and THAP were aware but failed to disclose.[1] The residents appeal a partial final judgment that dismissed count X against the City and count XV against THAP.[2] After careful review of the pleadings and record, we conclude the trial court did not err in dismissing these two counts of their third amended complaint with prejudice because the City and THAP owed no duty to the residents. We write only to discuss that portion of count X claiming that the City was negligent for failure to warn of the defective soil conditions.

Factual Allegations in the Third Amended Complaint
The third amended complaint asserted that in 1987 the City, in an effort to combat *324 urban blight, developed an Affordable Housing Program. Also at this time, the Mayor's Challenge Fund was established, a central component of which was to make money available to qualified individuals who were traditionally unable to buy homes. To meet the objectives of the Affordable Housing Program, the City would designate the following: a vacant tract of land to be used as the site for the housing subdivision, a not-for-profit developer, a not-for-profit entity to take title and sell parcels to homeowners, and the builder. In 1994, THAP, the designated not-for-profit developer, acquired the property now known as the Martin Luther King Village subdivision from its private owner. Prior to acquiring the property, THAP hired an engineering company to test the soil conditions. Following testing, the engineers reported that the soil beneath the land was not suitable in its present condition for constructing homes.[3]
In 1995, THAP sold the land to the second not-for-profit developer, Tampa United Methodist Centers, Inc. [TUMC], which contracted with a builder, All State Homes, Inc., to construct single family homes on the property. In February 1996, early in the construction process, the builder uncovered a layer of fibrous organic material and communicated this problem to TUMC, saying that as a result of the soil's condition the foundations of the homes would need to be strengthened at extra cost. TUMC refused to fund the additional work, claiming that it had already given the builder notice of the soil problem. Construction and sale of the homes continued without any action to ameliorate the problem.
Count X alleged that the City, which was neither the developer nor owner of the land nor the builder of the homes, was aware of the soil defects prior to the construction of the plaintiffs' homes and failed to disclose the soil defects to them. Further, it alleged that the developer purchased the land in question "at the behest of the City."

Analysis
Because the partial final judgment in favor of the City was predicated on the motion to dismiss, we must take as true those facts properly pleaded in the complaint. Paragraph 174 of the third amended complaint asserted that the City had a "legal duty to warn all Plaintiffs of the known and defective soil conditions affecting the Land." Although the allegations regarding the condition of the land and the City's actions raise fact questions, whether a defendant has a duty toward a plaintiff is a question of law that we review de novo. Bacon Family Partners, L.P. v. Apollo Condo. Ass'n, 852 So.2d 882 (Fla. 2d DCA 2003); see also Robert-Blier v. Statewide Enters., Inc., 890 So.2d 522 (Fla. 4th DCA 2005) (stating that in negligence, the threshold issue is the existence of the defendant's duty to the plaintiff, citing Clay Elec. Coop., Inc. v. Johnson, 873 So.2d 1182 (Fla.2003), and whether any duty in tort exists is a question of law, citing McCain v. Fla. Power Corp., 593 So.2d 500 (Fla.1992)). We thus look first to the duty element in the residents' negligence claim against the City.
In focusing on the claim of the City's negligent failure to warn of the defective soil conditions, we examine the serious allegation that a governmental entity has *325 harmed some of its citizens. "There is ... an august body of law which we must follow in determining those instances in which the sovereign will be liable for [such] failings." Pollock v. Fla. Dep't of Highway Patrol, 882 So.2d 928, 932 (Fla.2004). Two questions must be considered: the threshold question of whether the sovereign owes the plaintiff a duty, Clay Elec. Coop., 873 So.2d at 1185; and, if so, whether the governmental conduct is immune from liability, McCain, 593 So.2d at 502. See also Pollock, 882 So.2d at 932 ("If no duty of care is owed with respect to alleged negligent conduct, then there is no governmental liability, and the question of whether the sovereign should be immune from suit need not be reached."); Kaisner v. Kolb, 543 So.2d 732, 734 (Fla.1989) ("[T]he question of the applicability of ... immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity."); Trianon Park Condo. Ass'n v. City of Hialeah, 468 So.2d 912, 917 (Fla.1985) (holding that "for there to be governmental tort liability, there must be either an underlying common law or statutory duty of care"). "There can be no governmental liability unless a common law or statutory duty of care existed that would have been applicable to an individual under similar circumstances." Henderson v. Bowden, 737 So.2d 532, 535 (Fla.1999). Thus, we must determine whether the residents' claim of the City's negligent failure to warn is supported by either a statutorily imposed duty of care or by a common law duty identical to that imposed upon private citizens in these circumstances.
As to a statutory duty of care, the residents assert that "[t]he City had a legal duty to warn all Plaintiffs of the known and defective soil conditions affecting the Land." After carefully reviewing the third amended complaint and the record of proceedings of the trial court's hearing on the motion to dismiss, we have found no claim that a specific statute imposes such a duty to warn, nor is there a generalized claim of statutory duty. In the absence of any allegation that a specific statutory duty was owed to the residents, even by inference, the trial court had no choice but to find that the City could not be held liable because it could not breach a statutory duty it did not owe.
The probability that a common law duty exists, however, is greater, because governmental entities often deal with real property as private persons do. "Once a government entity builds or takes control of property or an improvement, it has the same common law duty as a private landowner to properly maintain and operate the property." Green v. Sch. Bd. of Pasco County, 752 So.2d 700, 701 (Fla. 2d DCA 2000). Here, the allegations against the City center around an improved piece of property that the City did not own or develop at the time the alleged disclosure was required, or at any other time. According to the third amended complaint, the City's role was to facilitate the project by bringing together and advising the various private sector entities, for the benefit of the community. The residents, however, have not alleged any facts that would give rise to a typical landowner's duty on the part of the City.
Moreover, in Trianon Park, the supreme court noted that "legislative enactments for the benefit of the general public do not automatically create an independent duty to either individual citizens or a specific class of citizens." 468 So.2d at 917. Although the City's municipal legislation that created the Affordable Housing Program was the impetus for the project of which the residents became the ultimate beneficiaries, it does not follow that a concomitant duty was thus created. As our supreme court has recognized:

*326 Governments must be able to enact and enforce laws without creating new duties of care and corresponding tort liabilities that would, in effect, make the governments and their taxpayers virtual insurers of the activities regulated.... Such a holding would inevitably restrict the development of new programs, projects, and policies and would decrease governmental regulation intended to protect the public and enhance the public welfare.
Id. at 922-23. If we were to reverse this case, our ruling would effectively create precisely the situation the Florida Supreme Court has warned against. We note further that "[t]he government clearly has no responsibility to protect personal property interests or ensure the quality of buildings that individuals erect or purchase. The proper remedy for faulty construction lies in an action against the contractor, developer, or seller." Id. at 923. Although the supreme court in Trianon Park was speaking in the context of building inspectors, we find this language equally applicable here.
Because Appellants have not established that the City had a statutory or common law duty to them based on the allegations in the third amended complaint, we need not reach the issue of whether sovereign immunity insulated the City against a negligence claim. Based on this lack of duty, the trial court did not err in dismissing count X of the third amended complaint as to the City.[4]
Affirmed.
WHATLEY and KELLY, JJ., concur.
NOTES
[1] The damages alleged were based on the property's prior use as an unlicensed dumping ground and included structural defects (cracking in the walls, floors, and window frames), chemical odors and debris (batteries, tires, and discarded needles) coming up from the soil, and a variety of respiratory and other illnesses (asthma, bronchitis, hair loss, severe headaches, and allergies).
[2] Other defendants, notably Tampa United Methodist Centers, Inc. (TUMC), and All State Homes, Inc., are also involved in this lawsuit but not in this appeal. Counts against them survived various motions to dismiss and remain pending. We have jurisdiction over this appeal because the partial final judgment dismissing the counts against the City and THAP totally disposed of the case against these two parties. See Fla. R.App. P. 9.110(k). Appellants' third amended complaint also named as defendants XYZ Corporations 1-50 and John Does 1-50.
[3] This report stated that just below the surface of the property to a depth of 3½ to 5½ feet was a layer of loose lime rock and other surface fill containing unsuitable materials, including an organic layer. The report further recommended removal of these unsuitable materials, including the organic layer, and compacting of the site, before home construction commenced.
[4] Although we decline to discuss the element of duty vis-a-vis the negligence ascribed to THAP in count XV, our holding should be read to encompass a similar conclusion.